WILFREDO BERTRAN PICORNELL
Demandante-Apelante

v.

SUN ALLIANCE INSURANCE CO. OF P.R. INC.
Demandada-Apelada

Núm. KLAN-95-00019

San Juan, Puerto Rico, a 27 de febrero de 1995

Panel integrado por su presidente, el Juez Rossy García
y los Jueces Alfonso de Cumpiano y Negrón Soto

Alfonso de Cumpiano, Juez Ponente

## TEXTO COMPLETO DE LA SENTENCIA

El Sr. Wilfredo Bertrán Picornell nos solicita en este recurso de apelación la revocación de la sentencia sumaria dictada el 24 de agosto de 1993 por el Tribunal de Distrito, Sala de San Juan, desestimando la demanda por él instada. El tribunal apelado sostuvo así la solicitud de Sun Alliance Insurance Co. of P.R., Inc. (Sun Alliance) de que no venía obligada a indemnizar al apelante por el hurto de un tractor asegurado, porque la póliza de seguros excluía la pérdida reclamada.

En síntesis, los hechos de este caso son los siguientes. El señor Bertrán Picornell obtuvo de Sun Alliance la póliza de seguros Núm. CLP-001512 para asegurar un tractor por la pérdida directa o daño por, entre otros, hurto *("theft")*. (Autos originales, pág. 24, cubierta H de la póliza). El apelante arrendó dicho tractor al Sr. Silvano Montes, quien le indicó que lo utilizaría para un proyecto de construcción en Ponce. Éste hizo un pago inicial de $2,500.00 y le dio su dirección y número de teléfono. Transcurrido el primer mes de arrendamiento y ante la falta de pago, el apelante hizo gestiones para localizarlo. Es entonces que adviene en conocimiento que la información suministrada por el señor Montes era falsa y que no existía el mencionado proyecto de construcción. Informó a la Policía el hurto. El tractor nunca fue recuperado. (Autos originales, págs. 1-2, Alegaciones de la demanda núms. 2 y 3). El señor Bertrán Picornell reclamó a Sun Alliance bajo el contrato de seguros. Ésta negó cubierta invocando la cláusula de exclusión núm. 8 de la póliza, que se refiere a la pérdida de la propiedad asegurada por infidelidad de un empleado o persona a quien el asegurado la confió.

Instada demanda por el señor Bertrán Picornell en cobro del seguro, Sun Alliance invocó la cláusula de exclusión y solicitó la desestimación de la demanda, a lo que accedió el tribunal.

El apelante sostiene que Sun Alliance está obligada a indemnizarlo por la pérdida de su tractor a base de que el señor Montes obtuvo la posesión del tractor bajo falsas representaciones con el propósito premeditado de hurtarlo, lo que vició su consentimiento como asegurado. Arguye que bajo esas circunstancias no se puede entender que confió la propiedad al señor Montes, por lo que no se activa la cláusula de exclusión.

Por su parte, Sun Alliance argumenta que la cláusula de exclusión no es ambigua, que no requiere ser interpretada como propone el apelante y que la forma en que ocurrieron los

hechos en este caso claramente están contemplados bajo lo dispuesto en la cláusula de exclusión, por lo que no tiene obligación alguna con el asegurado.

La controversia trabada entre las partes gira exclusivamente en torno a si la cláusula de exclusión es o no aplicable a los hechos de este caso, y si procedía el dictamen de sentencia sumaria para resolver dicha controversia.

# I

Debemos en primer término, exponer las normas imperantes en cuanto a la interpretación de los contratos de seguros. El Artículo 11.250 del Código de Seguros de Puerto Rico, 26 L.P.R.A. sección 1125, dispone que la interpretación de los contratos de seguros debe hacerse globalmente, a base del conjunto de sus términos y condiciones, según se expresa en la póliza. Sus términos deben ser tomados y entendidos en su acepción popular y ordinaria. Es decir, se buscará el sentido o significado que a las palabras de la póliza le daría una persona normal de inteligencia promedio. *PFZ Properties Inc. v. General Accident Insurance Company P.R. Ltd.*, ___ D.P.R. ___ (1994), **94 J.T.S. 116**, pág. 121; 10A *Couch Cyclopedia of Insurance Law*, §42:261, pág. 369 (1982). Además, siendo contratos de adhesión, en caso de obscuridad, sus cláusulas deben ser interpretadas en la forma menos favorable al asegurador, por ser quien las redacta. *Meléndez Piñero v. Levitt & Sons of Puerto Rico Inc.*, ___ D.P.R. ___ (1991), **91 J.T.S. 95**; *González v. Cooperativa de Seguros de Vida de P.R.*, 117 D.P.R. 659 (1986).

De igual forma, y en atención a que el propósito del contrato de seguro es indemnizar y proteger al asegurado en la eventualidad de que se produzca el evento incierto previsto en la póliza, se ha establecido que las cláusulas de exclusión deben interpretarse restrictivamente. En otras palabras, las dudas que puedan surgir deberán ser resueltas de forma tal que se cumpla el propósito tras la expedición de la póliza. Por tanto, corresponde a la aseguradora el peso de probar que la cláusula de exclusión es aplicable a los hechos de un caso particular. *PFZ Properties Inc. v. General Accident Insurance Company P.R. Ltd., supra,* pág. 124; Appleman, *Insurance Law and Practice*, West Publishing Co., Minnesota, 1970, Vol. 5, 53213, Supl. 1994; *Dugas v. Royal Globe Ins.* Co., 360 So.2d 554 (1978).

Comúnmente en casos de pólizas de hurto de vehículos las aseguradoras, mediante el uso de cláusulas de exclusión, limitan la responsabilidad asumida, no respondiendo por actos consistentes en: *"wrongful conversion, embezzelment, or secretion by a mortgagor, vendee, lesee or other person in lawful possession under a mortgage, conditional sale, lease, or other contract or agreement."* 7 Blashfield *Automobile Law and Practice* §312.9, pág. 392 (1987). Al interpretar contratos de seguros que contienen este tipo de cláusulas, varias jurisdicciones norteamericanas han resuelto que cuando el término *"theft"* no se define expresamente en la póliza, éste está sujeto a varias interpretaciones█ Ante su ambiguedad, la posición reciente ha sido interpretarlo de forma amplia para que incluya tanto apropiación ilegal como cualquier tipo de privación ilegal de propiedad y no sujetarlo a definiciones legalistas sino a la concepción que de ese término tienen los legos. Appleman, *ob. cit.*, § 3209, págs. 635-636; *Mann v. State Farm Mutual Automobile Insurance Co.*, 698 P.2d 925, 928-929 (1985, Oklahoma); *Almadova v. State Farm Mutual Automobile Insurance Co.*, 649 P.2d 284, 287 (1982, Arizona).

Por ello, se ha resuelto que la obtención de posesión mediante falsas representaciones, fraude o treta no constituye una posesión legal de la propiedad como se exige en la cláusula de exclusión. Este razonamiento responde a que la obtención de posesión legal requiere un acto válido entre las partes. Para que dicho acto sea válido, a su vez se requiere que la prestación del consentimiento para la entrega de la propiedad sea voluntario, consciente y libre. *Freedman v. Queen Insurance Company of America,* 364 P.2d 69, 71 (1961, California). █En otras palabras, la prestación de consentimiento inducida por error, coacción, fraude o

cualquier tipo de engaño no es válida y vicia el acto tornándolo nulo, por lo que no se puede entender que se entregó o confió la posesión voluntariamente. En consecuencia, la posesión de la propiedad no es legal. *Mann v. State Farm Mutual Automobile Insurance Company*, 698 P.2d 925, 929-930 (1985, Oklahoma); *Phaholythin v. State Farm Mutual Automobile Insurance Co.*, 432 N.W.2d 972 (1982, Illinois); *Collins v. Royal Globe Ins. Co.*, 368 So.2d 941, 942-943 (1979, Florida); *Dugas v. Royal Globe Ins. Co.*, 360 So.2d 533 (1978, Louisiana) *Galloway v. Marathon*, 248 S.W.2d 699 (1952, Arkansas); *Bomar v. Insurer's Indemnity & Insurance Co.*, 242 S.W. 2d 160 (1951, Texas); *Massachusetts Fire & Marine Ins. Co. v. Cagle*, 214 S.W.2d 909, 911 (1948, Arkansas).

Estos casos reiteradamente señalan que la aseguradora estaba en posición de limitar expresamente su responsabilidad ante la posibilidad de fraude por parte del tercero que logra la posesión de la propiedad asegurada y que al no limitarla, procedía se interpretara la cláusula de exclusión de forma restrictiva en su contra y liberal a favor del asegurado. (Véase, además, *Almadova v. State Farm Mutual Automobile Insurance Co., supra*, pág. 288).

En las jurisdicciones en que se ha determinado que la cláusula de exclusión es aplicable a pesar de que se indujo al asegurado a consentir a la entrega de la posesión de la propiedad mediante fraude o maquinaciones, la póliza contenía lenguaje que claramente denotaba la intención de la aseguradora de no asumir los riesgos expresamente indicados en la póliza, limitando en esos términos su responsabilidad. Véase a esos efectos *Biorklund v. Aetna Casualty L Surety Co.*, 306 N.W.2d 838, 839 (1981, Minnesota); *Aetna Casualty & Surety Co. v. Salyers*, 172 S.W.2d 635 (1943, Kentucky); *Ridwell v. Paul Revere Fire Insurance Co.*, 172 S.W.2d 639 (1943; Kentucky).

A manera de ejemplo de lo anterior, en *Biorklund v. Aetna Casualty & Surety Co., supra*, la aseguradora expresamente dispuso en la póliza que no sería responsable en situaciones en que la posesión se obtuvo mediante treta o falsas representaciones. En *Kidwell v. Paul Revere Insurance Co., supra*, pág. 640, el tribunal resolvió que la aseguradora no era responsable por la pérdida de la propiedad asegurada, toda vez que la póliza de seguro contenía una cláusula que eximía de responsabilidad en casos de arrendamiento o alquiler de la propiedad asegurada.

En *Aetna Casualty & Surety Co. v. Salyers, supra*, pág. 638, también se excluía de cubierta la pérdida de la propiedad en casos de alquiler o arrendamiento y por *"wrongful conversion, embezzelment... by a lesee...in lawful possession of the insured property under a...lease or other contract..."*. Al pasar juicio sobre el concepto de *"lawful possession"* el tribunal concluyó que la cláusula debía aplicar independientemente de la razón que hubiese motivado al asegurado a prestar su consentimiento y entregar la propiedad al tercero, toda vez que interpretar lo contrario tornaría la cláusula prácticamente nula. Su determinación se basó en la teoría de que el asegurado está en mejor posición que la aseguradora para determinar a quien confiaría su vehículo. Ante ello, debe entonces asumir el riesgo de pérdida si voluntariamente entrega la posesión al tercero.

En reacción a lo anterior, el tribunal en *Collins v. Royal Globe Insurance Co., supra*, pág. 943, expresó que:

*"Such an 'assumption of risk' theory may have merit, if it is presented to the insured by language in the policy which clearly and unequivocally informs the insured that he will not be covered for such risks"*.

Coincidimos con el razonamiento anterior a los efectos de que el lenguaje en la póliza debe informar clara e inequívocamente al asegurado que no estará cubierto por determinados riesgos. Ello es cónsono con la norma de interpretación restrictiva de las cláusulas de

exclusión adoptada en nuestra jurisdicción. El razonamiento utilizado en las jurisdicciones que han optado por no aplicar estas cláusulas excluyentes de responsabilidad cuando la definición de hurto es ambigua y la aseguradora estaba en posición de redactar la cláusula de exclusión en términos más claros, está más a tono con dicha norma, pues de esa forma se logra dar vigencia al propósito perseguido al obtener el asegurado la póliza.

## II

A la luz de las normas legales, los principios jurisprudenciales y razonamientos antes expuestos, analicemos la póliza objeto del presente recurso de apelación.

El propósito de la póliza expedida por Sun Alliance a favor del apelante es proteger al asegurado contra la pérdida del tractor asegurado. Una de sus cubiertas es contra el hurto del tractor. Sin embargo, no se delimita en la póliza el concepto hurto. Por tanto, éste debe interpretarse de forma amplia, adscribiéndole las nociones que dicho vocablo contempla.

Sabido es que, en nuestra jurisdicción, la definición de apropiación ilegal incluye todo tipo de hurto, bien sea mediante treta y engaño, abuso de confianza o falsa representación. Artículo 165 del Código Penal de 1974, 33 L.P.R.A. sección 4271; *Pueblo v. Rivera Toledo,* 117 D.P.R. 419 (1986); D. Nevárez-Muñiz, *Código Penal de Puerto Rico,* Instituto para el Desarrollo del Derecho, Inc., San Juan, 1993, pág. 263. Aún bajo nuestra jurisprudencia anterior al Código Penal de 1974, se estableció que *"una sustracción, dentro de la definición de hurto, ocurre cuando una persona, con un designio preconcebido de apropiarse la propiedad para su propio uso, obtiene dicha posesión por medio de fraude o de una treta. En este caso el fraude vicia la transacción...". Pueblo v. Ríos,* 69 D.P.R. 830, 836 (1949); *Pueblo v. Andrade González,* 88 D.P.R. 862, 864 (1963). Por ende, la posesión obtenida mediante un consentimiento viciado, que anula la transacción entre las partes, se considera ilegal.

La póliza en cuestión cubre al tractor de todo daño o pérdida por, entre otros, *"theft, except as hereinafter provided".* A renglón seguido, bajo el acápite *"This policy does not insure against"* se enumeran las trece (13) instancias bajo las cuales la póliza no es aplicable. Ninguna de estas cláusulas de exclusión incide sobre el concepto de hurto o delimitan expresamente su definición. La cláusula de exclusión en que Sun Alliance descansa para sostener que no es responsable por la pérdida del tractor bajo los hechos de este caso, dispone que no habrá cubierta por:

*"8. Infidelity of insured's employees or persons to whom the insured property is entrusted".* (Autos originales, pág. 24).

La aseguradora, al redactar los términos y cláusulas de esta póliza, omitió limitar su responsabilidad explícitamente en aquellos casos de hurto en que el asegurado entregara la posesión de la propiedad a un tercero, irrespectivamente de la forma fraudulenta o motivos ilegales que lo indujeran a ello. De esa forma, la aseguradora no dio suficiente aviso al asegurado de los riesgos cubiertos y no cubiertos por su póliza en caso de hurto.

En atención a todo lo anterior y dado que el término *"entrust"* (confiar) presupone la entrega voluntaria y consciente de la posesión, entendemos que la aplicación de la cláusula de exclusión en este caso debe interpretarse como que requiere que la posesión inicial de la propiedad sea legal.

En síntesis, la aplicación o no de la cláusula de exclusión en cuestión, requiere que se establezca la existencia o no de intención criminal por parte del arrendatario al momento de apropiarse de la propiedad asegurada y si las circunstancias que mediaron en el acto de la entrega o que la motivaron constituyen treta, fraude, engaño o elemento alguno que afectó la prestación del consentimiento del asegurado para confiarle al arrendatario el tractor. Ello es

fundamental para determinar si la posesión inicial fue legal o ilegal y por ende, si se confió o no el objeto asegurado mediante un acuerdo válido, esto es, si los hechos de este caso activan o no la cláusula de exclusión.

A nuestro juicio, estas determinaciones requieren ser dirimidas en un juicio en su fondo y no mediante un procedimiento de sentencia sumaria, como se dispuso en este caso.

## III

El mecanismo procesal de sentencia sumaria, consagrado en la Regla 36 de las Reglas de Procedimiento Civil, 32 L.P.R.A. Ap. III, es un remedio extraordinario discrecional que únicamente debe concederse en casos claros, cuando el tribunal tenga ante sí la verdad sobre los hechos pertinentes. *Medina Morales v. Merck, Sharp & Dohme*, ___ D.P.R. ___ (1994), **94 J.T.S. 52**, pág. 11786. El procedimiento de sentencia sumaria no permite al tribunal dirimir cuestiones de credibilidad. *Colegio de Ingenieros y Agrimensores,* ___ D.P.R. ___ (1992), **92 J.T.S. 137**, pág. 10025. Por ello, en casos en que existen dudas sobre la existencia o no de controversia sobre hechos materiales o cuando hay alegaciones afirmativas en la demanda que no han sido refutadas, la moción de sentencia sumaria debe resolverse en contra de su promovente. *Corp. of the Presiding Bishop of the Church of Jesus Christ of Latter Day Saints v. Purcell,* 117 D.P.R. 714, 722-723 (1986). El mero hecho de que la parte promovida no presente evidencia que controvierta la presentada por el promovente, no implica que necesariamente proceda la sentencia sumaria. *Rivera Santana v. Superior Packing,* 133 D.P.R. ___ (1992), **92 J.T.S. 165**, pág. 10165.

Las normas antes expuestas responden al hecho de que no se debe, en aras de aligerar la tramitación de un caso, derrotar el principio fundamental de todo proceso judicial, cual es alcanzar una solución justa. *PFZ Properties Inc. v. General Accident Insurance Company, P.R. Ltd., supra,* y casos allí citados.

En el presente caso el apelante alegó en su demanda que bajo representaciones falsas el arrendatario obtuvo la posesión del tractor. Con la moción de sentencia sumaria, Sun Alliance no presentó evidencia alguna para refutar esa alegación. Se limitó a someter las cláusulas y condiciones de la póliza y una comunicación del Comisionado de Seguros señalando que, a base de las cláusulas del seguro, la pérdida del tractor no estaba cubierta.█ Por su parte, el apelante *refutó la interpretación de la cláusula,* insistió en que la entrega del tractor fue bajo falsas representaciones con el propósito premeditado de hurtarlo, sin consentimiento válido de su parte y, que por ello, no lo *"confió".* █ Solicitó, a su vez, dictamen de sentencia sumaria a su favor, acompañando copia de interrogatorios a Sun Alliance y su contestación.

Como se indicó anteriormente, el hecho de la intención criminal y de la naturaleza inicial de la posesión es un hecho material y fundamental para la correcta determinación sobre la responsabilidad de la aseguradora. En consecuencia, erró el tribunal de instancia al disponer del presente litigio mediante el mecanismo de sentencia sumaria. Aún cuando el apelante no sometió prueba sobre esas alegaciones hay constancia en los autos de la existencia de una declaración grabada prestada por el asegurado que la aseguradora se proponía utilizar como prueba de las circunstancias en que ocurrieron los hechos alegados en la demanda. (Véase la contestación núm. 8 al interrogatorio cursádole por el apelante, Autos originales, pág. 36). Ésta no fue acompañada por la aseguradora en su solicitud de sentencia sumaria ni por el apelante en su réplica a la moción.

Finalmente, el apelante expone en su Réplica a escrito de la demandada-apelada, como un reconocimiento de la necesidad de dilucidar la prueba, que en este caso *"no hubo prueba de que existiera anteriormente relación alguna con el arrendatario",* aun cuando se refiere a hechos incontrovertidos. (Véase Réplica, pág. 4).

Procede, pues, se revoque la sentencia sumaria y se devuelva el caso al tribunal apelado para que se presente prueba sobre los extremos antes señalados y, a la luz de los hechos que encuentre probados y considerados bajo los principios aquí expuestos, el tribunal de instancia determine si la cláusula de exclusión es o no aplicable y por consiguiente, si la aseguradora es responsable por la pérdida sufrida por el asegurado.

## IV

En vista de todo lo anterior, se revoca la sentencia sumaria desestimando la demanda y se devuelve el caso al tribunal de primera instancia para la continuación de los procedimientos de forma consistente con la decisión que hemos emitido en el día de hoy.

Lo acordó y manda el Tribunal y lo certifica la Secretaria General.

María de la C. González Cruz
Secretaria General

### ESCOLIOS 95 DTA 15

**1.** A falta de jurisprudencia local interpretando cláusulas de esta naturaleza, acudimos a otras jurisdicciones a manera de ilustración. En casos que requieren interpretar contratos de seguros, la norma de nuestro Tribunal Supremo ha sido a los efectos de que se pueden utilizar tanto normas del derecho angloamericano como del derecho civil. *PFZ Properties Inc. v. General Accident Insurance Company P.R. Ltd., supra.*

**2.** En este caso se define *"entrust"* como la entrega o transferencia voluntaria y en confianza de la posesión.

**3.** En este caso el asegurado firmó un contrato de arrendamiento con un tercero quien pagó un depósito inicial, corroboró su identidad mediante su licencia de conducir y obtuvo su número de seguro social y dirección. El tercero nunca regresó con el vehículo. Ante esos hechos, el tribunal apelativo en este caso resolvió que la cláusula de exclusión no era aplicable y que la aseguradora era responsable por la pérdida del vehículo asegurado.

**4.** El Comisionado aclaró que su opinión fue a base de la información suministrada, que no constituía adjudicación de hecho alguno y que era de carácter consultivo. (Autos originales, pág. 27).

**5.** Autos originales, pág. 32.