IN THE COURT OF APPEALS

FILED

October 9, 1997

Cecil Crowson, Jr.
Appellate Court Clerk

HORACE A. LaRUE and CARLA LaRUE, ) KNOX CIRCUIT
Parents and next of kin of          )  C. A. No. 03A01-9702-CV-00053
RANDALL CHARLES LaRUE, deceased,    )
                                    )
                                    )
        Plaintiffs-Appellants       )
                                    )
                                    )
                                    )
                                    )
                                    )
vs.                                 ) HON. WHEELER A. ROSENBALM
                                    ) JUDGE
                                    )
                                    )
                                    )
                                    )
                                    )
1817 LAKE INCORPORATED, d/b/a       ) AFFIRMED IN PART,
BONKERS, HOWARD R. TANNENBAUM,      ) REVERSED IN PART
RICKY CHAMBERS, ROBERT ARCHER,      ) AND REMANDED.
and DANNY G. BREWER,                )
                                    )
        Defendants-Appellees        )

WILLIAM A. SIMMS, Arnett, Draper & Hagood, Knoxville, for Appellant.

RICHARD W. BAKER, JR., Gilreath & Associates, Knoxville, for Appellee, Danny G. Brewer.

CAROL A. BEELER for Appellee, Permanent General Companies, Inc.

DOUGLAS L. DUTTON, Hodges, Doughty & Carson, Knoxville, for Appellee, Maryland Casualty Insurance Co.

JAMES Y. REED, Jenkins & Jenkins, Knoxville, for Appellee, Ricky Chambers.

O P I N I O N

McMurray, Judge

This case arises from a motorcycle accident in which Randy LaRue, the 20-year old son of the plaintiffs, was killed. Plaintiffs sued 1817 Lake, Inc. d/b/a Bonkers, a Knoxville restaurant and bar, and Howard Tannenbaum, president of 1817 Lake Inc., alleging that the defendants negligently and unlawfully served Randy and his companion, defendant Danny Brewer, alcoholic beverages on the evening of the accident. Plaintiffs also sued Robert Archer, the bartender who allegedly provided LaRue and Brewer with the drinks, and Ricky Chambers, the doorman on duty at Bonkers that night. The remaining defendant, Danny G. Brewer was the operator of the motorcycle at the time of the accident which resulted in Randall Charles LaRue's death.

The case proceeded to trial before a jury. At the close of plaintiffs' proof, however, the trial court directed a verdict in favor of all the defendants and dismissed the complaint. This appeal resulted. We affirm the court's ruling as to the "dram shop" defendants and reverse the directed verdict in favor of Danny Brewer, the driver of the motorcycle.

On October 26, 1992, Randy LaRue and Danny Brewer played golf in the morning and early afternoon. Brewer testified that they

3

bought a 12-pack of beer on the way and while playing, each of them drank four or five. They played from about 10:00 a.m until 2:00 in the afternoon. On the way back they went to a liquor store and bought a bottle of cheap wine called Cisco, and split it while "driving around." Brewer testified that they ended up at LaRue's house between 4:15 and 5:00 p.m. and ate dinner there.

While at the LaRue house, they spoke with Pam Vandergriff, who was cleaning the house. She testified that neither one of them appeared to be drunk or under the influence of alcohol and that "they just seemed to be just normal guys." She did not see either of them drink any beer while they were there. Brewer testified that he had a cup of beer at the LaRue house.

After leaving LaRue's house, they made two brief stops, one at a friend's house and another at Brewer's house. At Brewer's house, they decided to take Brewer's Suzuki motorcycle to Bonkers. Bonkers is a restaurant and bar on that portion of Cumberland Avenue, in close proximity to the University of Tennessee campus, known as "the strip." Responding to the question of whether he was under the influence of an intoxicant before they got to Bonkers, Brewer replied, "I had a slight buzz, but I was not intoxicated drunk, no."

4

They arrived at Bonkers before its regular opening hour and were allowed to enter. Brewer testified that the doorman, Chambers, let them in, but both Chambers and the bartender, Archer, testified that it was Archer who opened the door for them. It is undisputed that no one asked either Randy LaRue or Brewer for age identification nor did anyone stamp their hands with a designation of either under or over 21 years of age, which was Bonkers' normal policy.

The witnesses' stories diverge considerably at this point. Brewer testified that he and Randy sat down at the bar, and Archer served them a pitcher of beer. Brewer testified that to the best of his knowledge, Archer gave them the drinks they had that night, because Archer was a friend of Randy LaRue. Brewer did not pay for any drinks, and he said that he did not see Randy pay for any either, although he couldn't be completely sure whether he did or not. At one point in his testimony, Brewer said he thought that they drank between one and three pitchers, and probably one apiece, and at another point he said he thought he had drunk 10 or 12 beers at Bonkers.

Archer testified that after they were admitted, they requested to be served, and Archer refused because they were not "of age." Randy LaRue then told Archer not to worry because Brewer had a fake I.D., and Archer replied that it didn't matter. Archer testified that later he noticed that the two were sitting with some friends

that had bought a pitcher, and they had glasses and were drinking from the pitcher. Archer stated that although he knew both LaRue and Brewer were under 21, he did nothing about them sharing drinks from the pitcher. Archer testified that he thought they were drunk when they got there, and no more drunk when they left. However, plaintiffs introduced Archer's signed statement to police investigator Tom Pressley, in which Archer stated, "I don't know what they had before they came in here, but I don't think they were drunk."

LaRue and Brewer were at Bonkers for a little over an hour. Brewer testified that as they were leaving, Archer gave him a Crown Royal and coke, saying, "here's one for the road, guys." Brewer stated that he "slammed" the drink just before leaving.

LaRue briefly conversed with Chambers as he was leaving and while Brewer, who had already exited, was sitting on his motorcycle. Chambers testified that he was very concerned that Brewer was drunk, because his eyes were red and glassy and "he was acting wild." He stated that he expressed concern to LaRue about getting on the motorcycle with Brewer, and tried to persuade him not to do so and offered to find him another ride. Chambers testified that Randy LaRue did not appear drunk at the time, and that he couldn't tell that anything was wrong with him LaRue's last words to Chambers were, "Rick, if I didn't think he were capable of driving it, I wouldn't get on it."

6

Both Archer and Chambers testified that they witnessed the two leaving, and that they were headed east, toward downtown and the accident site with Brewer driving. Brewer testified that before the accident occurred they headed west, and stopped at a friend's house on Concord Street to pick up a video game.

The accident occurred on the Main Avenue ramp in downtown Knoxville, between 9:15 and 9:30 p.m., almost immediately after the two left Bonkers. The motorcycle struck the right side of a guardrail as they were exiting the ramp. No other vehicles were involved. Randy LaRue was thrown between 30 and 40 feet from the motorcycle, sustained a massive head injury and never regained consciousness.

First on the scene was Mr. Jim Henderson, an employee of the Knox County Sheriff's Department who was then off duty and traveling with his wife. He stopped his car and assisted Brewer, who had sustained a serious leg injury but was conscious. Henderson asked Brewer what happened and he said "that they had came off the hill at Main Street going too fast and he had lost control." Ms. Tricia Ammons, a paramedic, testified that Brewer told her at the scene that he "was driving a little too fast and he lost control and wrecked."

7

At the time of the accident, Brewer's blood alcohol level was determined to be 0.21, and LaRue's was measured at 0.10. Brewer later pled guilty to a charge of criminally negligent homicide.

## I.

The first issue we will address is the propriety of the trial court's action in directing a verdict in favor of the "dram shop" defendants, i.e., all those defendants that were alleged to be negligent in providing alcohol to LaRue and Brewer. As the parties recognize, our analysis is governed by T.C.A. §§ 57-10-101 and 102, which state:

> **57-10-101. Proximate cause.** —The general assembly hereby finds and declares that the consumption of any alcoholic beverage or beer rather than the furnishing of any alcoholic beverage or beer is the proximate cause of injuries inflicted upon another by an intoxicated person.

> **57-10-102. Standard of Proof.** —Notwithstanding the provisions of § 57-10-101, no judge or jury may pronounce a judgment awarding damages to or on behalf of any party who has suffered personal injury or death against any person who has sold any alcoholic beverage or beer, unless such jury of twelve (12) persons has first ascertained beyond a reasonable doubt that the sale by such person of the alcoholic beverage or beer was the proximate cause of the personal injury or death sustained and that such person:

>> (1) Sold the alcoholic beverage or beer to a person known to be under the age of twenty-one (21) years and such person caused the personal injury or death as the direct result of the consumption of the alcoholic beverage or beer so sold; or

8

> (2) Sold the alcoholic beverage or beer to an obviously intoxicated person and such person caused the personal injury or death as the direct result of the consumption of the alcoholic beverage or beer so sold.

It seems quite clear that for T.C.A. § 57-10-102 to apply, the plaintiffs must prove beyond a reasonable doubt that the defendants "sold" an alcoholic beverage to LaRue and Brewer. The statute in each and every instance requires a sale before liability can be imposed. There is no direct evidence nor evidence in the record from which an inference can reasonably be drawn, that there was a sale to either Brewer or LaRue by the "dram shop" defendants. Plaintiffs argue, however, that the statute should not be construed as to require a "sale" of alcohol to a minor or obviously intoxicated person. They argue that, because of public policy against furnishing alcohol to minors, a showing beyond a reasonable doubt that a defendant "furnished" alcohol to a person under 21 should be enough to allow a jury to decide whether the furnishing was the proximate cause of an accident. We most respectfully disagree. We should first note that it is within the province of the General Assembly to establish and proclaim public policy. The Supreme Court in Watson v. Cleveland Chair Co, 789 S.W.2d 538 (Tenn. 1989), made the following observations:

> A definitive statement on the authority of the courts to determine public policy can be found in Nashville Ry. and Light Co. v. Lawson, 144 Tenn. 78, 91,

9

229 S.W. 741 (1920), citing from License Tax Case, 5 Wall, 469, 18 L. Ed. 497:

> "This Court can know nothing of public policy except from the constitution and the laws, and the course of administration and decision. It has no legislative powers. It cannot amend or modify any legislative acts. It cannot examine questions as expedient or inexpedient, or as politic or impolitic. Considerations of that sort must, in general, be addressed to the legislature. Questions of policy determined there are concluded here."

Watson, supra at page 540. See also Smith v. Gore, 728 S.W.2d 738 and the cases cited therein.

The General Assembly has unambiguously declared the public policy with regard to the furnishing of alcohol to persons under the age of 21 as it relates to "dram shops." We are not at liberty to hold otherwise. Accordingly, in the absence of evidence of a sale, the trial court was correct in directing a verdict in favor of the "dram shop" defendants.

## II.

After directing verdicts for the dram shop defendants, the trial court found, as to the remaining defendant, that reasonable minds could reach only one conclusion — that LaRue was at least fifty percent at fault for his death, when compared with the fault of Brewer. We must disagree. Although this is admittedly a close question, we find the trial court should have allowed it to be decided by the jury.

10

As the plaintiff points out, the facts of this case are very similar to those in Silcox v. Coffee, 1993 WL 350134 (Tenn. App. Sept. 15, 1993). In Silcox, the plaintiff was killed in an automobile accident after both he and the defendant driver had been drinking heavily. The defendant's blood alcohol level was 0.39 and plaintiff's was 0.37. Id. at **1. The court stated the following:

> Our inquiry is whether viewing the evidence in the plaintiff's favor, the evidence can reasonably support a conclusion that [plaintiff's] decision to ride with an intoxicated driver did not account for 50 percent or more of the proximate cause of his death. The reasonableness of a plaintiff's decision to encounter this risk is a factual determination to be determined by the trier of fact ... In the case at bar, the jury determined that [plaintiff's] death was caused 40 percent by his own negligence. This conclusion necessarily involves a consideration of the reasonableness of [plaintiff's] decision to ride with the defendant. There is ample evidence to support that [plaintiff's] decision to ride with defendant was unreasonable. We cannot say, however, that the evidence does not establish a basis from which the jury could have concluded that [plaintiff's] decision accounted for less than 50 percent of the proximate cause of his death. Accordingly, we find no error with the trial court's denial of defendant's motion for a directed verdict and his motion for a new trial.

Id. at **5 (emphasis added; citation omitted).

In Silcox, the defendant argued that Silcox assumed the risk of death by riding with an intoxicated driver and thus was barred from recovering damages. Defendant cited Harvey v. Wheeler, 57

11

Tenn. App. 642, 423 S.W.2d 283, 285 (Tenn. 1967), in which the court said:

> As a general proposition, a guest-passenger is precluded from recovering for injuries sustained in an automobile accident where the intoxicated condition of the driver of the automobile in which [the passenger] was riding was a proximate cause of the accident, if the guest-passenger knew or should have known of the driver's intoxication at the time the guest-passenger volunteered to ride in the automobile.
>
> *    *    *    *
>
> Whether or not the guest-passenger is contributorily negligent in riding in the automobile of the defendant is not to be determined on the circumstances as they appeared to the guest-passenger, but is to be determined by comparing the guest passenger's conduct with that of an ordinarily prudent man under like circumstances. (citation omitted).

As in Silcox, there is ample evidence here suggesting that LaRue's decision to get on the motorcycle was ill-advised and negligent. However, viewing all of the evidence in a light most favorable to plaintiffs, as we are required to do, we cannot say that reasonable minds could reach only the conclusion that LaRue was equally or more at fault than Brewer. We agree that the conclusion reached by the trial court that LaRue's fault was equal to or greater than Brewer's is a reasonable conclusion. We cannot say, however, that there is not another conclusion that could be reached by reasonable minds.

12

Brewer was the operator of the motorcycle and admittedly was traveling too fast at the time the accident occurred. It is not unreasonable to conclude that the accident was caused by excessive speed rather than or in addition to Brewers state of intoxication. Brewer's blood alcohol content was roughly twice that of LaRue's. In the final analysis, as the Silcox court noted, comparative fault is a question of fact within the jury's province, which should not lightly be invaded by the trial court. We do not mean to imply in any fashion that the trial court's action gave light consideration to the evidence or any other facet of the case. We are of the opinion that, under all the circumstances of this case, the question of the degree of fault between LaRue and Brewer should have been submitted to the jury.

The cases cited and relied upon by Brewer, Watts v. Robertson County, 1994 WL 706676 (Tenn. App. Dec. 21, 1994), Carr v. Ozburn-Hessey Storage Co., 1996 WL 383295 (Tenn. App. July 10, 1996), and Estate of Gunter v. Smith, 1996 WL 283069 (Tenn. App. May 30, 1996), are clearly distinguishable on their facts from this case. In Watts, the plaintiffs, passengers in a motor vehicle, brought suit for damages under the provisions of the Government Tort Liability Act, seeking to recover damages for their injuries. The case was tried at a bench trial and the court found the issues in favor of the defendant. Specifically, the court found that the passengers were as knowledgeable about the conditions of the

13

roadway, bridge and weather conditions as the driver. Fault was apportioned and as between the plaintiffs and the defendant, the court determined that the plaintiff's fault exceeded that of the defendant. This court in addressing the issue stated:

> The Trial Judge did not erroneously apply the law as to the duty of a passenger under the facts found by him Passengers in motor vehicles have a duty to exercise reasonable care for their own safety. Mansfield v. Colonial Freight Systems, Tenn. App. 1993, 862 S.W.2d 527. It is negligence for a passenger to voluntarily continue as such with knowledge of conditions of unreasonable danger. Talbot v. Taylor, 184 Tenn. 428, 201 S.W.2d 1 (1947). A passenger does not have the same duties as the driver of a vehicle, but is not without responsibility for his or her own safety. Harrison v. Pittman, Tenn. 1976, 534 S.W.2d 311.

We have no argument with the proposition set out in Watts. It is important to note that in Watts, however, that the findings of fault were made by the trier of fact and involved the credibility of witnesses. Such is not the case here.

Carr v. Ozburn-Hessey Storage Co., involved a collision between an automobile and a truck. The defendant moved for summary judgment. The court determined that there were no genuine issues of material fact and sustained the motion for summary judgment, finding from the undisputed facts that the plaintiff was, as a matter of law, more than 50% at fault. We do not believe that in

14

this case the facts before the court are undisputed to the extent that a judgment can be made as a matter of law.

In Estate of Gunter v. Smith, this court, in essence, determined that from the undisputed evidence there was no negligence on the part of the plaintiff. The court stated:

> In the final analysis, if the appellant is entitled to recover for the death of the decedent under the circumstances present here, such recovery must necessarily be based on an inference that the defendant should have seen the decedent before the collision occurred. We do not believe that actionable negligence can be inferred from "the mere fact of the occurrence of injury alone." Williams v. Jordan, 208 Tenn. 456, 346 S.W.2d 583, 586 (Tenn. App. 1961). Eaton v. McLain, 891 S.W.2d 587, 590 (Tenn. 1994) holds that the doctrine of comparative fault, McIntyre v. Balentine, 833 S.W.2d 52 (Tenn. 1992) does not alter the standards which govern assessment of evidence based upon the negligence of a plaintiff, and we think the trial judge correctly held that reasonable minds could not differ as to the conclusion to be drawn in a light most favorable to the plaintiff that the negligence of the deceased was equal to or greater than any inferential negligence of the defendant.

We do not believe that the authorities cited by the defendants have any application to the issues under consideration here. Here, it is reasonable to conclude that more probable than not both parties were negligent. Sufficient doubt exists, however, to require the case to be submitted to the jury.

Accordingly, we reverse the action of the trial court in directing a verdict against the plaintiffs and in favor of the

15

defendant, Brewer. The trial court is affirmed in all other respects.

In our discretion costs of this appeal are assessed equally between the plaintiffs and the defendant, Brewer. We remand the case to the trial court for a new trial as to the defendant, Brewer.

_____
Don T. McMurray, Judge

_____
Houston M Goddard, Presiding Judge

_____
Charles D. Susano, Jr., Judge

16

IN THE COURT OF APPEALS OF TENNESSEE

FILED

October 9, 1997

Cecil Crowson, Jr.
Appellate Court Clerk

EASTERN SECTION

HORACE A. LaRUE and CARLA          )
LaRUE, Parents and next of kin     )
of RANDALL CHARLES LaRUE,          )
Deceased                           )
                                   )
        Plaintiffs-Appellants      )
                                   )
                                   )
        v.                         )   KNOX COUNTY
                                   )   03A01-9702-CV-00053
                                   )
1817 LAKE INCORPORATED, d/b/a      )
BONKERS, HOWARD R. TANNENBAUM,      )
RICKY CHAMBERS, ROBERT ARCHER,     )
and DANNY G. BREWER                )
                                   )
        Defendants-Appellees       )


CONCURRING OPINION


Goddard, P.J.


I concur in Judge McMurray's reversal of the Trial Court's dismissal of the case against the operator of the motorcycle, Mr. Brewer, for the reasons stated therein, and in his affirmance of the dismissal as to the "dram shop" Defendants. I base my concurrence as to the latter upon T.C.A. 57-10-101, which

provides that consuming rather than furnishing[1] alcoholic beverages is the proximate cause of injuries inflicted by an intoxicated person.

In reaching this conclusion I note that no constitutional attack is leveled as to the statute and, further, that the import of T.C.A. 57-10-102 is not entirely clear. My reading of both Code Sections, however, persuades me that T.C.A. 57-10-102 is intended as an exception to 57-10-101 and allows recovery if the requirements contained therein are met. While it seems anomalous to me that the Legislature would insulate an alcoholic dispensing establishment from liability when the spirits are given away to those under 21 or intoxicated, as opposed to being sold, I conclude that under the clear language of T.C.A. 57-10-101 the acts of the "dram shop" Defendants, who furnished but did not sell the intoxicating beverage, are not the proximate cause of the death of Mr. LaRue, which is necessary to cast them in judgment.

_____
Houston M Goddard, P.J.

---

[1]     T.C.A. 57-4-203(b), which the complaint alleges the "dram shop" Defendants violated, provides the following:

(b) SALES TO MINORS PROHIBITED. (1) Any licensee or other person who sells, furnishes, disposes of, gives, or causes to be sold, furnished, disposed of, or given, any alcoholic beverage to any person under twenty-one (21) years of age is guilty of a Class A misdemeanor.

IN THE COURT OF APPEALS OF TENNESSEE

FILED

October 9, 1997

Cecil Crowson, Jr.
Appellate Court Clerk

HORACE A. LaRUE and CARLA LaRUE,) C/A NO. 03A01-9702-CV-00053
Parents and next of kin of )
RANDALL CHARLES LaRUE, deceased,)
                                 )
          Plaintiffs-Appellants,)
                                 )
                                 )
                                 )
                                 ) APPEAL AS OF RIGHT FROM THE
v.                               ) KNOX COUNTY CIRCUIT COURT
                                 )
                                 )
                                 )
1817 LAKE INCORPORATED, d/b/a    )
BONKERS, HOWARD R. TANNENBAUM,   )
RICKY CHAMBERS, ROBERT ARCHER,   )
and DANNY G. BREWER,             )
                                 ) HON. WHEELER A. ROSENBALM
          Defendants-Appellees. ) JUDGE


## CONCURRING OPINION


        I concur completely in Judge McMurray's holding that the
dram shop defendants were entitled to a directed verdict.  I also
agree with his reasoning in support of that holding.  As to the
defendant Brewer, I agree that, based upon the plaintiffs' proof,
a jury could reasonably find that any negligence on the part of the
deceased was less than the negligence of Brewer.  Therefore, I
agree that the plaintiffs' claim against Brewer must be remanded
for a new trial.  My concurrence is limited to these statements.


                         _____
                         Charles D. Susano, Jr., J.


20