IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
August 16, 2011 Session

## BARBARA A. LYNCH, deceased, by her sister and next of kin, CELINE HAYES, and CELINE HAYES as an individual, v. LOUDON COUNTY, TENNESSEE, et al.

**Appeal from the Circuit Court for Loudon County**
**No. 2008-CV-239      Hon. Russell E. Simmons, Jr., Judge**

_____

**No. E2010-02231-COA-R3-CV-FILED-OCTOBER 14, 2011**

_____

In this wrongful death action, plaintiff alleged that deceased was involved in a one car accident and the investigating officer, after her car was removed from the guardrail by the wrecker, allowed her to continue driving when he knew or should have known that she was impaired and was a danger to herself, and he violated his duties to her and shortly thereafter she had yet another one-vehicle accident which resulted in her death. The Trial Court, responding to defendants' motion for summary judgment, found that the public duty doctrine applied and if the officer did undertake to protect deceased, she did not rely upon his undertaking. He granted defendants summary judgment. On appeal, we hold that under the public duty doctrine, plaintiff owed no specific duty to deceased, unless he undertook to assume such duty. We hold that there is disputed material evidence as to whether he assumed such duty to deceased but discontinued his aid and protection to deceased which left her in a worse position than she was before he intervened. We reverse the summary judgment and remand for further proceedings consistent with this Opinion.

**Tenn. R. App. P.3 Appeal as of Right; Judgment of the Circuit Court Reversed.**

HERSCHEL PICKENS FRANKS, P.J., delivered the opinion of the Court, in which CHARLES D. SUSANO, JR., J., and JOHN W. MCCLARTY, J., joined.

Joseph R. Ford and Ashley Harrison Shudan, Loudon, Tennessee, for the appellants, Barbara A. Lynch, deceased, by her sister and next of kin, Celine Hayes.

Arthur F. Knight, III., Knoxville, Tennessee, for the appellees, Loudon County, Tennessee and Bryan Blakney.

# OPINION

Barbara Lynch, deceased, by her sister and next of kin, Celine Hayes, brought this action for Wrongful Death against Loudon County, Loudon County Sheriff's Department, and Deputy Bryan Blakney, alleging that Lynch's death was the result of a car accident, and Deputy Blakney responded to the one car accident involving Lynch, wherein her vehicle had left the road and hit the guardrail. Plaintiffs allege that when Blakney found Lynch, she was wearing only a bathrobe and shoes, and appeared unstable. Further, that Blakney aided Lynch in getting her car back on the road and allowed her to drive away, and that shortly thereafter (within 2 miles of the accident site) she again lost control of her car, and it left the roadway hit a utility pole, resulting in fatal injuries.

Plaintiffs further allege that Blakney knew or should have known that Lynch was impaired, and that she was a danger to herself and others when driving in that state, and yet Blakney allowed her to drive away in violation of his duties. Further, that Blakney had affirmatively undertaken to protect Lynch and that Lynch relied upon him, and plaintiffs sought recovery on the theories of negligence, respondeat superior, and reckless misconduct in violation of LCSD's policy/procedures manual.

Defendants filed an answer, asserting the affirmative defense that Blakney was immune from suit pursuant to the GTLA, and that he did allow Lynch to drive away, after determining that she was not hurt and was stable. They denied all other allegations and liability, and stated that plaintiffs' action was barred by the doctrine of comparative fault, by the public duty doctrine, and by sovereign immunity and the GTLA.

Plaintiffs amend their Complaint adding a claim under 42 U.S.C. §1983, which was denied by defendants.

Defendants filed a Motion for Summary Judgment, stating that plaintiffs' state law claims were barred by 1) the doctrine of modified comparative fault, 2) the public duty doctrine, and 3) discretionary function immunity. They also set forth that plaintiffs' §1983 claims were barred by 1) the fact that plaintiffs failed to allege a violation of Lynch's clearly established constitutional rights, 2) Blakney's qualified immunity, and 3) because Loudon County had no policy/custom behind the alleged deprivation of constitutional rights.

Defendants filed a detailed and extensive Statement of Material Facts. Defendants also attached several deposition excerpts, including the deposition of Glen Farr, Pharm. D., who stated that he taught pharmacology at the UT College of Pharmacy, and that Lynch's toxicology report showed Xanax within the range of a therapeutic dose, and that this was of no concern. Farr stated that the Ambien was at least 1.0 micrograms per milliliter, and that the lab had no ability to measure any higher than that, so one could not know how much

greater the level was. Farr stated that Ambien at that level is toxic, and that when coupled with the Xanax it would be even more toxic. Farr stated the effects would be drowsiness, confusion, probably slurred speech, and an unsteady gait. He stated that the surge of adrenalin from having the wreck might offset some of the symptoms for a few minutes, but that at this level, most people would have difficulty functioning, although everyone's tolerance was different. He stated that he would expect a person with this amount of Ambien in her system to have a great deal of confusion and disorientation.

Defendants attached the deposition of Dr. Darinka Polchan, who performed the autopsy. She testified that the test for Ambien only went to 1, so her level could have been 1.1, or 2, or 3, and there was no way to tell. He testified that the level detected was toxic, and was about ten times the therapeutic dose. Polchan said that a person's reaction/actions on such a high dose would depend on how long they had been taking the drug and whether they had built up a tolerance for it. She testified that a person could still function with that level, but there would be some impairment. She further observed that the fact that Lynch left work in only a bathrobe and canvas shoes demonstrated that something was wrong.

Nola Thomas' deposition is also attached, and in it, Ms. Thomas states that on the morning in question, she was driving home after taking her children to school. She stated that she lived one mile from the site of the first accident, and had for 22 years. She stated that she had never seen any other accidents there, and that she did not see the accident occur, but was driving home and saw Lynch's car against the guardrail. She stated that she stopped and got out of her car and talked to Lynch. Thomas related that the roads were wet, but she had not personally run into any icy spots. She stated that she asked Lynch if she needed help, and Lynch said yes. Thomas called 911 for Lynch, and the 911 operator had her ask Lynch if she was injured, and Lynch said no. Thomas stated that she walked back to her car because it was raining, and then had a thought that Lynch might need to call someone, so she walked back to Lynch and Lynch was digging through her wallet, laying her money everywhere, all over the seat and dashboard. Thomas testified that she handed Lynch her phone and told her she could use it to call someone, and Lynch just looked at it and then handed it back to her. Thomas testified that Lynch asked her to call her sister, but Lynch was unable to give Thomas the sister's number after some effort.

Thomas stated that Lynch looked sleepy or groggy, and she thought Lynch was either drunk or might have taken drugs. She said that Lynch did not "act right" and didn't need to be driving, in her opinion. Thomas stated that Officer Blakney arrived and she walked over to his car and told him that "something is not right" with Lynch, and told him Lynch couldn't give her a telephone number, tell her where she lived, or answer any questions.

Thomas stated that Blakney told her he would check it out and he walked over and spoke to Lynch briefly, but she couldn't really hear what was said. Thomas testified that Blakney walked back to talk to two other officers who had arrived, and she heard him say,

jokingly, that Lynch was in a bathrobe. She testified that she stopped Blakney and asked him if he was going to let Lynch leave, and said "you probably shouldn't" or something like that, and he replied "probably not". After that she left the scene.

Thomas further testified that she was concerned and would have stayed and gotten help for Lynch if she had known that Blakney was going to let her drive away.

Deputy Blakney's deposition was attached, and he testified that he was a corrections officer with LCSD, and had worked there for three years. He testified that he remembered arriving at Lynch's first accident scene on the morning of January 22, 2008, but that he could not remember anyone else being there. He testified that two other officers also came, but only stayed a few minutes, and didn't interact with Lynch. Blakney testified that Mr. Malone (wrecker operator) and his helper came, and were on the scene for about 10-15 minutes, but he didn't remember Ms. Thomas, but had read the transcript where she called 911 for Lynch. Blakney testified that he was 26 years old, and didn't consult with anyone about Lynch's condition.

Blakney testified that he had worked the midnight to 8 am shift that day, and then had to work over because the weather was bad and there were lots of accidents. He testified that the first shift officers came in early, and administrators and detectives had to go out and work accidents as well. He testified that Lynch had another wreck within ten minutes of leaving the first accident, and he went to that scene and was shocked that she had wrecked again.

He reiterated that when he got to the scene of the first wreck, Lynch was sitting in her car and her car was stuck against the guardrail. He testified that there was very light damage to Lynch's car, that she had a bathrobe on, and had a shocked expression, not unlike most people who have just had an accident.

Blakney testified that he had training in DUI detection, and admitted that a one-car accident could be a sign of a DUI. Further, that he investigated Lynch's sobriety by looking at her eyes, talking to her, observing how she talked, acted, her quickness, and how clearly she answered questions. He concluded that Lynch was not impaired, and that she gave him no reason to suspect that she was DUI. He testified that Lynch got out of her car to pay the wrecker driver, she was steady on her feet, had clear speech, and counted the money correctly, and she assured him she was fine, and he concluded that he felt he did everything correctly.

Also attached was the deposition of Junior Johnson, who testified that he was helping John Malone (the tow truck driver) on that day, and he hooked Lynch's car to the tow truck. He testified that he spoke to Lynch briefly and she seemed fine, but she never got out of the car. He testified that Lynch seemed nervous when she spoke, but that she followed Malone's directions with her car, and that Malone offered to take Lynch home, but she declined.

-4-

Also attached was the deposition of John Malone, who stated that he offered to drive Lynch home after pulling her car out because she was so "fidgety", and kept pulling at her robe. He testified that he thought there was something wrong, and that Lynch acted strange.

Malone testified that he followed Lynch when she drove off, and that she wasn't speeding. He testified that they eventually came to an intersection and had to pull out, and a couple of cars got between them, and then Lynch went around a curve and over a hill, and when they caught up, she had run off the road again. He further testified that he didn't think Lynch was on drugs, and she followed all of his commands, and drove away perfectly.

Defendants also attached the deposition of Celine Hayes, Lynch's sister, and she testified that Lynch was 52 years old, not married, and that they lived together, and Lynch had high blood pressure, and took a prescription for it. Hayes testified that Lynch also had anxiety attacks, and took Xanax for that, as well as Ambien to help her sleep. She testified that Lynch had taken Xanax for about ten years, and that she was not sure how long she had taken Ambien.

Hayes testified that Lynch worked at the Adult Community Training Center, and worked the midnight to 8 am shift, and that Lynch worked with mentally challenged clients, and helped them take baths, get into bed, and then stayed with them through the night. She testified that Lynch slept after she got home in the mornings, and that Lynch carried her medications with her.

Plaintiffs filed a Memorandum in Opposition to Defendants' Motion for Summary Judgment, arguing that there were genuine issues of material fact which required jury resolution. Plaintiffs also filed an Additional Statement of Material Facts, citing Ms. Thomas' testimony about Lynch's appearance and behavior, and the fact that she exhibited symptoms of confusion and drowsiness, and that this had been called to Blakney's attention. Plaintiffs also disputed several factual statements in Defendants' Statement of Material Facts, and defendants likewise disputed several factual statements in Plaintiffs' Additional Statement of Material Facts.

After a hearing on the Motion for Summary Judgment, the Trial Court issued a Memorandum Opinion, finding that the public duty doctrine was applicable under the facts of this case, and that there was no special duty exception because there was no showing that Lynch relied on Blakney's assistance. The Court found that there was a dispute of fact as to whether Blakney affirmatively undertook to protect Lynch, but that this was of no consequence because Lynch did not rely on his undertaking, and refused offers of assistance from Malone or EMS. The Court granted summary judgment on the GTLA claims, and also on the §1983 claim because there was no "state created danger" as the risk of the deceased's driving was to the public at large.

Plaintiffs filed a Notice of Appeal, and raised as the issue, whether the Trial Court erred in granting summary judgment to defendants?

In summary judgment cases, we are required to view the evidence in the light most favorable to the non-moving party. *Downs v. Bush*, 263 S.W.3d 812 (Tenn. 2008). A grant of summary judgment presents a question of law for the Court to review *de novo* without a presumption of correctness. *Id.* Summary judgment "should not replace a trial when disputed factual issues exist, because its purpose is not to weigh the evidence, to resolve factual disputes, or to draw inferences from the facts." *Id.*

The Tennessee Governmental Tort Liability Act ("GTLA") provides that, "[e]xcept as may be otherwise provided in this chapter, all governmental entities shall be immune from suit for any injury which may result from the activities of such governmental entities wherein such governmental entities are engaged in the exercise and discharge of any of their functions, governmental or proprietary." Tenn. Code Ann. § 29-20-201. "This general rule, however, is subject to several statutory exceptions." *Hill v. City of Germantown*, 31 S.W.3d 234, 236 (Tenn. 2000). The statutory exception at issue in this case provides as follows: "Immunity from suit of all governmental entities is removed for injury proximately caused by a negligent act or omission of any employee within the scope of his employment", and then lists certain specific exceptions.[1] Tenn.Code Ann. § 29-20-205.

The Trial Court did not find that any of the listed exceptions applied, but did find that plaintiffs' GTLA claim was barred by the public duty doctrine. The public duty doctrine shields a public employee from lawsuits alleging liability for a breach of that employee's duty owed to the public at large. *Ezell v. Cockrell*, 902 S.W.2d 394 (Tenn. 1995). The doctrine states that private citizens cannot maintain a lawsuit complaining of a breach of duty by a public employee unless the private citizen can show a special relationship/interest/injury, not common to the general public. *Id.*

In *Ezell*, the Supreme Court held that the public duty doctrine remained viable despite enactment of the GTLA, but that there was an "exception to the rule of no-liability that applies where a 'special relationship' exists between the plaintiff and the public employee, which gives rise to a 'special duty' that is more particular than the duty owed by the employee to the public at large." *Id*. at 401. The Supreme Court said that in Tennessee, the "special duty" exception existed when 1) officials, by their actions, affirmatively undertake to protect the plaintiff, and the plaintiff relies upon the undertaking; 2) a statute specifically provides for a cause of action against an official or municipality for injuries resulting to a particular class of individuals, of which the plaintiff is a member, from failure to enforce certain laws; or 3) the plaintiff alleges a cause of action involving intent, malice, or reckless misconduct. *Id*. at 402.

---

[1] None of the listed exceptions are applicable in this case, as addressed later in the Opinion.

In this case, the Trial Court found that the public duty doctrine applied, and that even if Blakney did undertake to protect Lynch, Lynch did not rely upon his undertaking, and thus the special duty exception did not apply based on subpart one of the above analysis. The Trial Court did not address, however, the other two factual scenarios that could provide a basis for a special duty exception.

Plaintiffs argue that the public duty doctrine is not applicable in this case, because the duty owed to Lynch after Blakney affirmatively undertook to help/protect her was a duty of reasonable care, and was more/different than the duty he owed to the public at large. Plaintiffs also argue that since they alleged that Blakney was guilty of reckless misconduct, even if the public duty doctrine does apply, their claim would fall within the special duty exception.

Viewing the facts in the light most favorable to plaintiff, it would appear the Trial Court erred in granting summary judgment to defendants based on the public duty doctrine. The Trial Court found that the public duty doctrine clearly applied based on the facts of this case, but the Trial Court did not consider whether Blakney might have owed a duty to Lynch that was different than the duty he owed to the public at large as a police officer. Section 324 of the Restatement (2nd) of Torts states:

> One who, being under no duty to do so, takes charge of another who is helpless adequately to aid or protect himself is subject to liability to the other for any bodily harm caused to him by (a) the failure of the actor to exercise reasonable care to secure the safety of the other while within the actor's charge, or (b) the actor's discontinuing his aid or protection, if by so doing he leaves the other in a worse position than when the actor took charge of him.

In this case, if Blakney's duty as a police officer was only to the public at large, as defendants argue,[2] then he owed no specific duty to Lynch, unless he affirmatively undertook to assume such duty. Pursuant to the above Restatement (2nd) of Torts §324, if Blakney took charge of Lynch and Lynch was helpless, and Blakney's discontinuation of his aid/protection left Lynch in a worse position than she was in before, then liability could attach, as Blakney would have undertaken to assume the duty of aiding Lynch.

Restatement (2nd) of Torts §324 has been held to be applicable by our Supreme Court to a case where friends were alleged to have placed the decedent, in a drunken and

---

[2] It is "generally held that the specific duty to preserve the peace is one which the officer owes to the public generally, and not to particular individuals, and that the breach of such duty accordingly creates no liability on the part of the officer to an individual who was damaged by the lawbreaker's conduct. Rather, it is held, a law enforcement officer is amenable only to the public, and punishable only by indictment for the breach of his duty as conservator of the peace." *Hurd v. Flores*, 221 S.W.3d 14 (Tenn. Ct. App. 2006).

purportedly helpless state, into the bed of a pickup truck, from which the decedent fell or jumped and was hit by another car. *See Downs v. Bush*, 263 S.W.3d 812 (Tenn. 2008). The Supreme Court held that it was error to grant summary judgment to the defendants when there was a dispute of fact regarding whether the decedent was "helpless" and whether the defendants "took charge of" him or whether he got in the bed of the truck of his own accord. *Id.*

In this case, there is a dispute of fact regarding whether Lynch was "helpless" and whether Blakney "took charge of" her such that summary judgment was inappropriate. The evidence showed that Lynch had taken a toxic dose of Ambien, and that Ms. Thomas, who interacted with her the most, testified that Lynch was sleepy/groggy, confused, and disoriented. Thomas testified that Lynch was behaving strangely, was dressed inappropriately, and could not give her a phone number for her sister nor answer questions regarding where she was going or where she lived. Thomas testified that she believed, based on Lynch's actions, that she was either drunk or on drugs. Thomas testified that she communicated these concerns to Blakney upon his arrival, and that Blakney spoke to Lynch very briefly. Thomas also testified that she asked Blakney if he was going to let Lynch drive away and communicated that she thought that inadvisable, and he told her "probably not".

Both the tow truck driver and his assistant testified that Lynch was dressed inappropriately and was "fidgety" and nervous. Blakney stated that he thought Lynch was fine, that she showed no signs of impairment, but that his only "test" of her sobriety was to speak to her, look into her eyes, and observe how she acted and talked. He could not detail any specific questions that he asked her or what her responses were, and did not remember Thomas being there at all.

Again, viewing the facts in the light most favorable to plaintiffs, there is clearly a dispute of material fact regarding whether Lynch was helpless due to her level of impairment from the Ambien and the condition of her car after her first wreck. There is also a dispute of fact regarding whether Blakney took charge of her by helping her get back on the road and drive away to her death less than ten minutes later, and whether by rendering the aid he did and then discontinuing the same, he left Lynch in a worse position than she would have been in if he had not helped her at all. We hold the Trial Court improperly granted summary judgment based on the public duty doctrine, due to a dispute of fact regarding whether Blakney assumed a duty specifically to Lynch.

In this case there is also a question of whether a special duty exception exists. The Trial Court found there was a dispute of fact about whether Blakney affirmatively undertook to help Lynch, but that Lynch clearly did not rely upon that undertaking. As stated earlier, the Trial Court failed to analyze the other two bases for application of the special duty exception, including whether Blakney's actions might have constituted reckless misconduct.

Plaintiffs alleged in their Complaint that Blakney's actions constituted reckless misconduct. Reckless misconduct has been defined as, "when a person is aware of, but consciously disregards, a substantial and unjustifiable risk of such a nature that its disregard constitutes a gross deviation from the standard of care that an ordinary person would exercise under all the circumstances." *Hodges v. S.C. Toof & Co.*, 833 S.W.2d 896 (Tenn. 1992). The Trial Court did not rule on whether Blakney's actions could have constituted reckless misconduct. There are disputed material facts on this issue.

Defendants allege that the doctrine of comparative fault and the application of discretionary function immunity would also result in summary judgment in this case, issues which defendants raised in their Motion for Summary Judgment, but which the Trial Court also pretermitted.

Discretionary function immunity is one of the exceptions listed to the removal of immunity under the GTLA. Tenn.Code Ann. § 29–20–205. As our Supreme Court has recognized, the GTLA does not define the term "discretionary function", so the Court formulated the following test:

> Under the planning-operational test, decisions that rise to the level of planning or policy-making are considered discretionary acts which do not give rise to tort liability, while decisions that are merely operational are not considered discretionary acts and, therefore, do not give rise to immunity.

*Bowers v. City of Chattanooga*, 826 S.W.2d 427, 430 (Tenn. 1992). Thus, in one case, the Supreme Court held that a police officer's decision to allow a motorist to use an interstate crossover in violation of state law was an operational decision that did not rise to the level of a discretionary function under the above test. *Hurd v. Flores*, 221 S.W.3d 14 (Tenn. Ct. App. 2006).

As was explained by our Supreme Court in *Bowers*:

> [A] decision resulting from a determination based on preexisting laws, regulations, policies, or standards, usually indicates that its maker is performing an operational act. Similarly operational are those ad hoc decisions made by an individual or group not charged with the development of plans or policies. These operational acts, which often implement prior planning decisions, are not "discretionary functions" within the meaning of the Tennessee Governmental Tort Liability Act. In other words, "the discretionary function exception [will] not apply to a claim that government employees failed to comply with regulations or policies designed to guide their actions in a particular situation."

*Id.* at 431 (citations omitted).

In light of the foregoing, discretionary function immunity would not be applicable in this case. Blakney made a determination based on preexisting laws, regulations, etc., and his decision did not rise to the level of planning or policy-making. Thus, summary judgment would not be proper on the basis of discretionary function immunity.

Moreover, summary judgment would not be proper based on comparative fault. As this Court has previously noted, summary judgment is generally not an appropriate method to determine comparative fault. *LaRue v. 1817 Lake, Inc.*, 966 S.W.2d 423 (Tenn. Ct. App. 1997). Only if "the evidence is evaluated in the light most favorable to the plaintiff and reasonable minds could not differ that her fault was equal to or great[er] than that of" defendants, would summary judgment be appropriate. *Staples v. CBL & Associates, Inc.*, 15 S.W.3d 83 (Tenn. 2000).

In this case, when the evidence is viewed in the light most favorable to plaintiff, reasonable minds could differ regarding whether Lynch's fault was equal to or greater than Blakney's. Lynch was drugged with a toxic level of sleep medication, which both doctors testified would likely make her appear groggy, disoriented, and unsteady, and that she should not be driving. Lynch exhibited those symptoms on the day in question, as three witnesses described her as acting strangely, and Ms. Thomas, who interacted with her the most, described her symptoms in great detail. Consistent with the medical testimony, Thomas stated that Lynch was sleepy/groggy, disoriented, confused, could not answer questions, etc. It is undisputed that the weather was cold and damp, and yet Lynch was dressed in nothing but a bathrobe and shoes. She appeared nervous and "fidgety", and kept pulling at her robe, and Thomas and Malone both testified that "something was not right" with Lynch.

Defendants rely heavily on the fact that Lynch "voluntarily" ingested a toxic level of Ambien, and then voluntarily drove in that state, misrepresenting her condition to everyone who asked. There is no evidence, however, of how or why this amount of medication came to be in Lynch's system, or whether that was truly a voluntary choice. *See Timmons v. Metro. Gov't. of Nashville*, 307 S.W.3d 735 (Tenn. Ct. App. 2009).

It should be noted that defendants cite to and rely upon a plethora of cases whereby victims of drunk drivers have tried to assert claims against police officers who stopped said drivers and failed to arrest them, and then the drivers went on to have an accident because of their impaired state and the victim was injured thereby. Liability is typically not imposed in those cases, usually because of some form of "public duty" argument. This case is distinguishable, however, in that Blakney did not just fail to stop Lynch from driving, but rather he actually came to her aid and enabled her to drive, when she would not have otherwise been able to get back on the road. This affirmative act on the part of Blakney in aiding Lynch to her detriment is precisely what sets this case apart from the other cases mentioned by defendants.

Finally,  in viewing the evidence in the light most favorable to the plaintiffs, disputed issues of material facts are presented on the issues in this case.  We reverse the Judgment of the Trial Court and remand for further proceedings consistent with this Opinion.  The cost of the appeal is assessed against the defendants.

_____
HERSCHEL PICKENS FRANKS, P.J.