Unified Judicial System

 

 
 Formatting provided courtesy of State Bar of South Dakota
and South Dakota Continuing Legal Education, Inc.
222 East Capitol Ave.
Pierre, SD 57501-2596 
DAVID L. WEGLEITNER,
Plaintiff and Appellant,
v.
BRIAN LEE SATTLER,
Defendant,
and Town of Lake City, a public corporation,
incorporated under the laws of South Dakota,
d/b/a Lake City Municipal Bar,
Defendant and Appellee.
South Dakota Supreme Court
Appeal from the Fifth Judicial Circuit, Marshall County, SD
Hon. Larry H. Lovrien, Judge
#20211--Affirmed
Lee Schoenbeck, John W. Burke
Schoenbeck Law Office, Webster, SD
Attorneys for Plaintiff and Appellant.
Roy A. Wise, Richardson, Groseclose, Wyly, Wise & Sauck, Aberdeen, SD
Attorneys for Defendant and Appellee.
Considered on Briefs Feb 18, 1998; Reassigned May 13, 1998
Opinion Filed Aug 5, 1998
GILBERTSON, Justice (on reassignment).
[Â¶1] David Wegleitner was injured after being struck by an intoxicated motorist. Wegleitner brought suit against the bar which furnished the intoxicating liquors to the motorist. Wegleitner appeals from summary judgment granted in favor of bar. We affirm.
FACTS AND PROCEDURE 
[Â¶2] On the evening of March 9, and into the early morning hours of March 10, 1996, Brian Sattler was a customer at the Lake City Municipal Bar (Bar). He testified by deposition that he arrived some time after 6:00 p.m. and left at closing time at 2:00 a.m. He testified that he drank in excess of twelve beers at the Bar, became intoxicated, and did not remember the last hour he was there. He later learned that his sister offered to drive him home, but he did not independently recall that conversation.
[Â¶3] Sattler left the Bar, driving south on South Dakota Highway 25. Meanwhile, Marshall County Deputy Sheriff David Wegleitner was patrolling that highway and had caused a suspected drunk driver to pull onto the shoulder. They were seated in the patrol car, amber lights flashing, when Sattler's vehicle violently struck the patrol car from behind, causing severe injuries and damages. Wegleitner sued Sattler and Bar for his injuries.(fn1)  Wegleitner alleges that Bar continued to serve alcohol to Sattler despite his obviously intoxicated condition. The trial court granted Bar's motion for summary judgment and Wegleitner appeals raising the following issues:


1. Whether SDCL 35-11-1 is an unconstitutional violation of the doctrine of separation of powers by the South Dakota Legislature for establishing the consumption of alcohol as the sole proximate cause for negligence in alcohol related cases.
2. Whether SDCL 35-11-1 and SDCL 35-4-78 violate the open courts provision of SD Const. art. VI, Â§20.
3. Whether SDCL 35-11-1 is an unconstitutional violation of the doctrine of substantive due process under SD Const. art. VI, Â§2.
STANDARD OF REVIEW 
[Â¶4] Our review of a challenge to the constitutionality of a statute is de novo. Green v. Siegel, Barnett & Schutz, 1996 SD 146, Â¶7, 557 NW2d 396, 398 (citing Kyllo v. Panzer, 535 NW2d 896, 897 (SD 1995)).


To succeed in a constitutional challenge to a legislative act, the challenger must prove beyond a reasonable doubt that the legislature acted outside of its constitutional authority.
City of Chamberlain v. R.E. Lien, Inc., 521 NW2d 130, 131 (SD 1994). "If a statute can be construed so as not to violate the constitution, that construction must be adopted." Cary v. City of Rapid City, 1997 SD 18, Â¶10, 559 NW2d 891, 893, (citing Simpson v. Tobin, 367 NW2d 757, 766 (SD 1985).(fn2)  
[Â¶5] Common Law And Statutory Historical Background
Tavern Owners Not Liable at Common Law


At common law it is not a tort to either sell or give intoxicating liquor to ordinary able-bodied men, and it has been frequently held that in the absence of statute, there can be no cause of action against one furnishing liquor in favor of those injured by the intoxication of the person so furnished. The reason usually given for this rule is that the drinking of the liquor, not the furnishing of it, is the proximate cause of the injury. The rule is based on the obvious fact that one cannot become intoxicated by reason of liquor furnished him if he does not drink it.
45 AmJur2d Intoxicating Liquors Â§553 (1969) (collecting cases) (emphasis added). There can be no doubt that this was the rule in this jurisdiction as in Paulson v. Langness, 16 SD 471, 474, 93 NW 655, 656 (1903), we held, "[a]t common law the wife could not recover [from a saloon owner] for the loss of support occasioned by the death of her husband." See also Kennedy v. Garrigan, 23 SD 265, 121 NW 783 (1909). We continued to recognize this common law rule of nonliability for the supplier of alcoholic beverages in Griffin v. Sebek:


At common law, and apart from statute, no redress exists against persons selling, giving, or furnishing intoxicating liquor, or their sureties, for resulting injuries or damage due to the acts of intoxicated persons, whether on the theory that the dispensing of the liquor constitutes a direct wrong or constitutes actionable negligence. In the same vein, it has been stated that there is no cause of action at common law for selling or giving away intoxicating liquor to one who is strong and able-bodied. The rule is based on the theory that the proximate cause of the injury is the act of the purchaser in drinking the liquor and not the act of the vendor in selling it.
90 SD 692, 695, 245 NW2d 481, 483 (1976) (quoting 48A CJS Intoxicating Liquors Â§428 (1981) (emphasis added)), overruled on other grounds by Walz v. City of Hudson, 327 NW2d 120 (SD 1982). Walz was superseded by SDCL 35-11-1, infra, as stated in Wildeboer v. South Dakota Junior Chamber of Commerce, Inc., 1997 SD 33, 561 NW2d 666.
Legislative Involvement in the Allocation of Fault in Alcohol Related Accidents.
[Â¶6] The South Dakota legislature has enacted a statutory scheme regulating the selling of alcohol. SDCL 35-4-78 provides:


No licensee may sell any alcoholic beverage:

(1) To any person under the age of twenty-one years; or
(2) To any person who is obviously intoxicated at the time.
A violation of this section is a Class 1 misdemeanor.
However, no licensee is civilly liable to any injured person or his estate for any injury suffered, including any action for wrongful death, or property damage suffered because of the intoxication of any person due to the sale of any alcoholic beverage in violation of the provisions of this section.
The South Dakota legislature has codified the common law in the area of liability for injuries inflicted by intoxicated persons. SDCL 35-11-1 provides:


The Legislature finds that the consumption of alcoholic beverages, rather than the serving of alcoholic beverages, is the proximate cause of any injury inflicted upon another by an intoxicated person. Therefore, the rule in Walz v. City of Hudson, 327 NW2d 120 (SD 1982) is hereby abrogated.
[Â¶7] This Court has recognized this legislative policy determination that no civil liability "will attach to a bar for the furnishing of alcoholic beverages to a person who subsequently causes an injury to a third party." Wildeboer, 1997 SD 33 at Â¶29, 561 NW2d at 671. Therein we cited SDCL 1-1-24 which provides: "[i]n this state the rules of the common law ... are in force, except where they conflict with the will of the sovereign power, expressed in the manner stated in Â§1-1-23." Id. In affirming summary judgment in favor of the Jaycees, this Court noted that the legislature simply codified the common law of negligence by enacting SDCL 20-9-1 which provides:


Every person is responsible for injury to the person, property, or rights of another caused by his willful acts or caused by his want of ordinary care or skill, subject in the latter cases to the defense of contributory negligence.
Id. 1997 SD 33 at Â¶13, 561 NW2d at 669 (citing In re Certif. of Questions (Knowles v. United States) (Knowles), 1996 SD 10, Â¶21, 544 NW2d 183, 188 (citing Baatz v. Arrow Bar, 426 NW2d 298, 304 (SD 1988) (other citations omitted))). SDCL 35-11-1 and the amended SDCL 35-4-78 merely, by codification, return to the common law rule of nonliability for furnishers of alcoholic beverages. In Wildeboer, we concluded that:


If the Legislature can validly enact, repeal and amend statutes, we know of no constitutional doctrine that precludes it from interpreting a statute by the enactment of another statute. Our cases are legion where we seek to interpret the intent of the Legislature.
Id.
[Â¶8] As previously noted, this Court in Griffin, supra, answered "no" when asked to decide whether "in the absence of a Civil Damage Act, otherwise referred to as a "Dram Shop Act," the common law ... authorizes or should be liberalized to afford a remedy" against those who furnish intoxicating liquors. The Griffin court found no common law or statutory right giving rise to such an action and declined to judicially legislate in this area. Id. 245 NW2d at 483. "That the creation of rights and remedies in these civil damage acts is a proper exercise of legislative power has been so long settled that no citation of authorities is necessary." Id. (citing Kennedy, supra).


One thing must be constantly borne in mind when considering these civil damage acts--the right and the remedy created by these statutes are exclusive. No right of action exists save that expressly given by the statute, and the remedy prescribed cannot be enlarged except by further legislative enactment.
Id. (citing Kennedy, 23 SD at 268, 121 NW at 785). The common law rule that the consumption of alcoholic beverages is the proximate cause of any damages, rather than its furnishing, was again recognized by this Court, and continued to be adhered to. Id.
[Â¶9] As noted, Griffin was subsequently overruled by Walz on nonconstitutional statutory grounds. However, Walz was abrogated by SDCL 35-11-1. This legislative act merely codified a return to the common law as set forth in Griffin. The passage of SDCL 35-11-1 and the analysis in Wildeboer have reaffirmed the common law doctrine of nonliability recognized in Griffin thus creating the basis for Wegleitner's constitutional challenges.
ISSUE I 
[Â¶10] Whether SDCL 35-11-1 is an Unconstitutional Violation of the Doctrine of Separation of Powers by the South Dakota Legislature for Establishing the Consumption of Alcohol as the Sole Proximate Cause for Negligence in Alcohol Related Cases.
[Â¶11] There is a two-fold purpose for the doctrine of separation of powers. Its first purpose is to prevent an unnecessary and therefore dangerous concentration of power in one branch of government. Chadha v. Immigration & Naturalization Service, 634 F2d 408, 422-23 (9thCir 1980). Second, it also serves as a practical measure to efficiently facilitate the administration of our state government by the assignment of numerous labors to designated governmental authorities. Id. We have held that:


This court has power to determine what such legislation is, what the constitution contains, but not what it should contain. It has the power to determine what statutory laws exist, and whether or not they conflict with the constitution; but it cannot say what laws shall or shall not be enacted. It has the power, and it is its duty, whenever the question arises in the usual course of litigation wherein the substantial rights of any actual litigant are involved, to decide whether any statue has been legally enacted[.]
State v. Thorson, 9 SD 149, 154-55, 68 NW 202, 203-4 (1896).(fn3)  
[Â¶12] Our analysis in Knowles, supra, supports the constitutionality of SDCL 35-11-1 and SDCL 35-4-78. First, this Court held that South Dakota does not recognize a parent's claim of loss of a child's consortium because the common law did not recognize such a claim and the legislature did not enact a contrary statute. Id. 1996 SD 10 at Â¶42, 544 NW2d at 192. We relied upon long standing constitutional authority as to legislative power over the status of the common law:


[W]e see that the "Constitution does not forbid the creation of new rights, or the abolition of old ones recognized by the common law, to attain a permissible legislative object." Duke Power Co., 438 US at 88 n32, 98 SCt at 2638 n32, 57 LEd at 720 n32 (quoting Silver v. Silver, 280 US 117, 122, 50 SCt 57, 74 LEd 221 (1929)). Munn v. Illinois, 94 US 113, 134, 24 LEd 77, 87 (1876) echoes this point:



A person has no property, no vested interest, in any rule of the common law ... . Rights of property which have been created by the common law cannot be taken away without due process; but the law itself, as a rule of conduct, may be changed at the will, or even at the whim, of the legislature, unless prevented by constitutional limitations. Indeed, the great office of statutes is to remedy defects in the common law as they are developed, and to adapt it to the changes of time and circumstances.
Id. 1996 SD 10 at Â¶84, 544 NW2d at 203. This is consistent with tavern owner nonliability, as the common law as well as the statutes now before us do not recognize a claim against tavern owners because the act of furnishing alcohol was not the proximate cause of any injuries.(fn4)  
[Â¶13] In Simpson v. Kilcher, 749 SW2d 386 (Mo 1988), the plaintiff was injured by a drunken driver. Plaintiff brought suit against the bar that had served the drunken driver. Missouri statutes overruled previous cases to the contrary and declared that the furnishing of alcoholic beverages, "[is] not the proximate cause of injuries inflicted upon another by an intoxicated person."(fn5)  The plaintiff challenged the constitutionality of this statute as a violation of separation of powers. In rejecting this argument the Simpson court reasoned:


In this case section 537.053.2 does not "impair judicial analysis" because no analysis is necessary. Under the facts of this case the statute simply bars Simpson's cause of action. The reference to proximate cause was designated to restate the reasoning used by the common law courts in rejecting dram shop liability. By explicitly rejecting the reasoning of Carver, Sampson, and Nesbitt, the legislature made it clear that dram shop liability would no longer exist in Missouri. The reference to the cases may not have been the best means available for the legislature to express its intent, but in this case there can be no doubt the intent was to prohibit dram shop liability.
749 SW2d at 390.
[Â¶14] The separation of powers issue was also analyzed in Reuter v. Korb, 616 NE2d 1363 (IllAppCt 1993). In a personal injury action, the plaintiff argued against the allowance of the defendant's statutorily authorized affirmative defense of comparative fault. The plaintiff maintained that since comparative fault was initially adopted by a court decision, it was a violation of the doctrine of separation of powers for the Illinois legislature to subsequently modify that doctrine by legislation. In rejecting that challenge the court held that while a legislature may not pass a statute that attempts to change the result of a court decision that is permanent and final between two parties, the legislature "may enact legislation which changes the effect of a prior decision of a reviewing court with respect to cases which have not yet been decided." Id. at 1378.
[Â¶15] While not specifically addressing this issue in a separation of powers context, numerous other jurisdictions have upheld their respective state legislatures' policy determinations that tavern owner liability shall be extinguished altogether or severely limited. 
[Â¶16] The California legislature has abolished tort liability against the furnisher of alcoholic beverages "except in only one situation, namely, providing alcohol to an obviously intoxicated minor.(fn6)  No other exceptions to this immunity exist." Cardinal v. Santee Pita, Inc., 286 CalRptr 275, 277 (CalCtApp 1991).(fn7)  While it is a misdemeanor to supply alcohol to "any habitual or common drunkard or to any obviously intoxicated person" such a violation will not give rise to civil liability. CA Bus. & Prof. Â§25602. The court in Cantwell v. Peppermill, Inc., 31 CalRptr2d 246, 249 (CalCtApp 1994), held that Â§25602


generally immunizes an establishment from liability for injuries to third parties resulting from the furnishing of alcohol to its patrons, permitting its patrons to consume alcoholic beverages on the premises, or for failing to prevent or prohibit its patrons from drinking alcoholic beverages and encouraging the use of its premises for drinking.
(citing Leong v. San Francisco Parking, Inc., 1 CalRptr2d 41 (CalCtApp 1991)).
[Â¶17] The California Supreme Court has rejected the claim that the immunizing statute constitutes an unconstitutional denial of equal protection. Cory, 629 P2d at 12. The Cory court noted that the legislature has expansive authority to "establish and to abolish tort causes of action" in holding that the challenged statutes were rationally related to a legitimate state purpose. Id. at 12-13.


Except as the Constitution otherwise provides, the Legislature has complete power to determine the rights of individuals. [Citation.] It may create new rights or provide that rights which have previously existed shall no longer arise[.]
Id. at 13 (citation omitted).
[Â¶18] A directed verdict in favor of "dram shop" defendants was affirmed in LaRue v. 1817 Lake Inc., 1997 WL 621340, *1 (TennCtApp 1997), appeal denied, (Tenn 1998), after recognizing that the legislature, not the courts, determines public policy. Tennessee has enacted the common law rule that "consumption of any alcoholic beverage or beer rather than the furnishing ... is the proximate cause of injuries inflicted upon another." TCA 57-10-101. Unlike South Dakota, the Tennessee legislature, however, has enacted public policy exceptions to the common law rule allowing civil liability where a plaintiff establishes beyond a reasonable doubt that the "sale" was the proximate cause of the injury and that the alcohol was sold to a minor or an "obviously intoxicated person." TCA 57-10-102.
[Â¶19] The LaRue court rejected plaintiff's claim that:


because of public policy against furnishing alcohol to minors, a showing beyond a reasonable doubt that a defendant "furnished" [or gave away rather than specifically "sold"] alcohol to a [minor] should be enough to allow a jury to decide whether the furnishing was the proximate cause of an accident.
Id. The LaRue court explicitly stated that since the legislature "unambiguously declared the public policy" in establishing the proximate cause burden, the court was "not at liberty to hold otherwise." Id.


This Court can know nothing of public policy except from the constitution and the laws, and the course of administration and decision. It has no legislative powers. It cannot amend or modify any legislative acts. It cannot examine questions as expedient or inexpedient, or as politic or impolitic. Considerations of that sort must, in general, be addressed to the legislature. Questions of policy determined there are concluded here.
Id. (emphasis added) (quoting Watson v. Cleveland Chair Co, 789 SW2d 538, 540 (Tenn 1989)).
[Â¶20] The Georgia legislature has codified the common law proximate cause rule of nonliability with one narrow exception when a person "willfully, knowingly, and unlawfully sells, furnishes, or serves alcoholic beverages to a person who is not of lawful drinking age, knowing that such person will soon be driving a motor vehicle ... when the sale ... is the proximate cause of such injury or damage." OCGA 51-1- 40(b) (Supp 1993). The legislature may create, abolish, and amend rules governing civil liability of licensees. Jaques v. Lever, 831 FSupp 881 (SDGa 1993) (holding "OCGA 51-1-40 provides for a civil cause of action and that this latter Code section preempts other causes of action").
[Â¶21] In Kappa Sigma International Fraternity v. Tootle, 473 SE2d 213 (GaCtApp 1996), a plaintiff's common law negligence claim against the provider of alcohol was rejected. The court relied upon the common law proximate cause rule as found in OCGA 51-1-40 ("A provider of alcoholic beverages is insulated from liability to third parties except as provided" by statute.). Id. at 216 (citation omitted).
[Â¶22] Nevada also adheres to the common law rule that the "act of selling [an] intoxicating beverage [is] too remote to serve as the proximate cause of an injury resulting from the negligent conduct of the purchaser of the drink." Snyder v. Viani, 885 P2d 610, 612 (Nev 1994). The Snyder court made it abundantly clear the legislature, "after appropriate surveys, hearings and investigations," is the proper forum to regulate civil liability of tavern owners. Id. (citing Hamm v. Carson City Nugget, Inc., 450 P2d 358 (Nev 1969)).


Our continued adherence to the bright-line common law rule necessitates our conclusion that, as with injuries to third parties, consumption is the proximate cause of alcohol-related injuries to the drinker. Furthermore, we have recognized that permitting third-party negligence claims against commercial alcohol vendors would require us "to answer ... a sundry of ... multifarious questions for the flood of injured litigants that [would] inevitably crowd the Nevada courts." First-party claims, like third-party claims, would flood our courts with a multitude of questions that are better addressed by the legislature. "Where, as here, the issue involves many competing societal, economic, and policy considerations, the legislative procedures and safeguards are well equipped to the task of fashioning an appropriate change, if any, to the settled rule." We find it noteworthy that following our decision in Hinegardner, the 1993 Nevada legislature chose not to enact legislation that would impose civil liability on tavern keepers for the sale of alcoholic beverages to underage drinkers. This choice not to extend liability supports our decision in Hinegardner and our decision here.
Id. at 612-13 (emphasis added) (citations omitted).
[Â¶23] The Colorado legislature responded similarly to a judicial departure of the common law refusal to impose on tavern owners by enacting a statutory scheme similar to South Dakota's. Colorado has abolished dram ship liability except in limited circumstances whereupon recovery is limited to $150,000. ColoRevStat Â§12-47-801 (1997). The Colorado legislature's amendments of the dram shop statutes were premised on a recognition that it is not the sale or service of alcohol, but the consumption of alcohol that proximately causes injuries that result from intoxication. Sigman v. Seafood Ltd. Partnership I, 817 P2d 527, 531 (Colo 1991); Charlton v. Kimata, 815 P2d 946, 951 (Colo 1991).
[Â¶24] The Colorado Court of Appeals has upheld this legislative exercise by making it explicitly clear that the civil liability of alcohol vendors is "strictly a creature of statute in Colorado." Dickman v. Jackalope, Inc., 870 P2d 1261, 1264 (ColoCtApp 1994). The Dickman court found that the legislature clearly expressed its intent that its statutory scheme "be interpreted so that any common law cause of action against a vendor of alcoholic beverages is abolished" except in limited circumstances for the willful and knowing sale of alcohol to a minor or a person who is visibly intoxicated.(fn8)  
[Â¶25] The case law in the area of a tavern owner's civil liability for the furnishing of intoxicating liquor is remarkably consistent given its somewhat divergent statutory basis. Some states, like South Dakota, have codified the common law rule of absolute immunity. Other states have adopted the common law rule of immunity but have provided limited exceptions. The unifying characteristic of the above survey is that the courts have determined that their respective legislatures, and not the courts, are the proper place to determine the state's public policy. Despite how socially desirous the opposite result may be, research indicates no case holding that such statutes violate separation of powers limitations.
[Â¶26] Wegleitner argues that the Legislature unconstitutionally invaded the exclusive function of the judiciary by precluding the courts from even considering cases and controversies involving alleged negligence of liquor licensees. Rather than violate the constitutional doctrine of separation of powers, SDCL 35-11-1 by statute returns to the common law rule of nonliability for furnishers of alcoholic beverages which had existed in this state for most of its history. Further, when addressing claims of negligence, the legislature has seen fit to limit or preclude recovery for claims of negligence in numerous instances which are constitutionally sanctioned: sovereign immunity, workmen's compensation, statutes of limitation and volunteer immunity. Wegleitner is unable to muster a single case from a single jurisdiction which in this factual setting has adopted his rationale. Based on the above-cited authority it is clear that the South Dakota legislature had the constitutional authority to enact 35-11-1 establishing the proximate cause of the alcohol related loss.
ISSUE II 
[Â¶27] Whether SDCL 35-11-1 and SDCL 35-4-78 Violate The Open Courts Provision Of SD Const. Art. VI, Â§20.(fn9)  
[Â¶28] Although we have had recent occasion to consider the scope of this constitutional provision, we have not done so against a factual background such as this. Green, 1996 SD 146, 557 NW2d 396 (1996); Knowles, 1996 SD 10, 544 NW2d 183; Kyllo, supra. In fact, his question was specifically reserved in Wildeboer, 1997 SD 33 at Â¶25, 561 NW2d at 671.
[Â¶29] Article VI, Â§20 of the South Dakota Constitution states:


All courts shall be open, and every man for an injury done him in his property, person or reputation, shall have remedy by due course of law, and right and justice, administered without denial or delay.
As this constitutional provision has remained unchanged since its adoption in 1889, our research and analysis is historically based. Kyllo, Knowles and Green, supra.
[Â¶30] In Knowles, this Court explicitly recognized the constitutional boundaries between the legislature and the judiciary and laid out the required analysis before striking down a statute as violative of the South Dakota Constitution:


In matters of economics and social welfare, courts must defer to our democratically elected representatives unless their enactments patently conflict with some constitutional provision. Ferguson v. Skrupa, 372 US 726, 83 SCt 1028, 10 LEd2d 93 (1963). If SDCL 21-3-11 is to be found unconstitutional, it can only be struck down based on its legislative history and our prior case law interpreting our constitution.
Id. 1996 SD 10 at Â¶59, 544 NW2d at 195. Neither our prior case law nor legislative history provide an adequate basis to strike down SDCL 35-11-1 and SDCL 35-4-78. To the contrary, our prior case law invited the legislature to do exactly what it did by enacting the statutes at issue. See Walz, 327 NW2d at 122,(fn10) Wildeboer, 1997 SD 33 at Â¶30, 561 NW2d at 671.


Where the constitutional validity of a statute depends upon the existence of facts, courts must be cautious about reaching a conclusion respecting them contrary to that reached by the legislature; and if the question of what the facts establish be fairly debatable one, it is not permissible for the judge to set up his opinion in respect of it against the opinion of the lawmaker. Radice v. New York, 264 US 292, 294, 44 SCt 325, 326, 68 LEd 690, 694 (1924).
Knowles, 1996 SD 10 at Â¶67, 544 NW2d at 197.
[Â¶31] Although the wording varies from state to state, thirty seven states have constitutional provisions similar to South Dakota's. Note, Kyllo v. Panzer: The South Dakota Supreme Court Declares Statutes Unconstitutional Which Limited State Employee Liability, 42 SDLRev 327 (1997). See also Green, 1996 SD 146, Â¶17, 557 NW2d at 401. The same year our Constitution was enacted, the Supreme Court of Minnesota observed in Allen v. Pioneer Press Co., 41 NW 936, 938 (Minn 1889), that, "it must be remembered that what constitutes 'an adequate remedy' or 'a certain remedy' is not determined by any inflexible rule found in the constitution, but is subject to variation and modification, as the state of society changes." In Flanders v. Town of Merrimack, 4 NW 741, 747 (Wis 1880), the Wisconsin Supreme Court noted that this provision could not provide relief to all claimants simply by virtue of the nature of the legal system which through the frailties of human nature may not always result in the vindication of a claim.(fn11) See also New York Life Ins. Co. v. State, 211 NW 288, 291 (Wis 1926). Relying on this earlier case law, the court in Neuhas v. Clark County, 111 NW2d 180, 184 (Wis 1961), declared, "[t]his merely guarantees every suitor his day in a court of competent jurisdiction; it does not guarantee a remedy accompanied by certainty of recovery." We determined in Green that the prevailing view at the time of the adoption of Art VI, Â§20 was that the provision simply prohibited the selling of justice or requiring fees or fines for a judicial officer to act. 1996 SD 146, Â¶17, 557 NW2d at 401 (citing In re Lee, 168 P 53 (Okla 1917) and Malin v. La Moure County, 145 NW 582, 586 (ND 1914)). Montana interpreted its provision to provide:


the Constitution was written and adopted in the light of the conditions and well-known laws ... as they then existed in Montana, and must be construed accordingly. The salutary declarations of section 6 simply recognize fundamentals of government dear to the American heart; they assert nothing new in the way of constitutional declaration, and clearly were not intended to affect statutory laws then existing.
(Citations omitted). See also Pullen v. Novak, 99 NW2d 16, 21 (Neb 1959).
[Â¶32] In Sigman, the heirs of an intoxicated decedent challenged the constitutionality of a statute very similar to SDCL 35-4-78 and 35-11-1. As in South Dakota, Colorado had removed dram shop liability by statutory enactment. The plaintiff's argument was based on a claim of violation of the Colorado open courts provision of its constitution. The Sigman Court rejected the open courts challenge observing, this constitutional provision "does not prevent the legislature from changing the law which creates a right. Rather, this section simply provides that if a right does accrue under the law, the courts will be available to effectuate such right." 817 P2d at 533 (citations omitted).
[Â¶33] Given the above nature of the understanding of the drafters of the constitutional provisions and its contemporary judicial interpretations, it is clear that these provisions in South Dakota and surrounding states were meant to allow unhindered access to the courthouse by a person who had a valid cause of action based on existing statute or the common law, timely and properly brought, who then would be allowed to present their case to a human fact finder. In other words under those conditions, a litigant was guaranteed its day in court. Our early cases beginning with McClain v. Williams, 10 SD 332, 73 NW 72 (1897), rev'd on other grounds, McClain v. Williams, 11 SD 60, 75 NW 391 (1898), are consistent with this type of interpretation. In Green, we analyzed our case law from McClain in 1897 up to Knowles in 1996 and found no basis for a claim that Art. VI, Â§20 could by itself become a sword to create a cause of action or become a shield to prohibit statutorily recognized barriers to recovery such as a statute of limitations.


We are confident that this condition to the legal cognizability of the claim does not violate the constitutional guarantee for that every "injury done" there shall be a "remedy." The "remedy" constitutionally guaranteed "for an injury done" is qualified by the words "by due course of law." This means that the remedy constitutionally guaranteed must be one that is legally cognizable. The legislature has the power to define the circumstances under which a remedy is legally cognizable and those under which it is not.
Green, 1996 SD 146 at Â¶26, 557 NW2d at 403 (citing Lamb v. Wedgewood South Corp., 302 SE2d 868, 882 (NC l983)).
[Â¶34] As we noted in Green, to construe this provision otherwise could lead to unacceptable results. 1996 SD 146 at Â¶25, 557 NW2d at 403 (citing Knowles, 1996 SD 10 at Â¶83, 544 NW2d at 203). One would freeze the common law rights as they existed in 1889. Id. "The state of tort law would remain frozen in the nineteenth century, immutable and eventually, obsolete." Id. The only way to change common-law remedies would be by the difficult amending of our constitution. A second path, equally unacceptable, is to cut the constitutional provision from its origins and embark on a doctrine of doing away with barriers to recovery with no rational basis to draw any line halting the application of such a theory, arriving at a legal doctrine akin to "anything goes."(fn12)  1996 SD 146, Â¶28, 557 NW2d at 404. A third unacceptable option would allow an arbitrary line to be drawn by a bare majority of the justices based on their subjective inclinations rather than reliance upon the established meaning of the constitutional provision. All three theories are inappropriate to sound constitutional jurisprudence.
[Â¶35] As has been previously established, during our Territorial period preceding the enactment of the Constitution, the common law was well developed on the issue of tavern owner liability. The drafters of the Constitution were very familiar with the subject of alcoholic beverages.(fn13)  Although there have been some statutory modifications in the rules concerning liability through the years. SDCL 35-4-78 and 35-11-1 clearly express the current legislative intent on the subject. It is a bar to the claim by Wegleitner against Lake City concerning the operation of its bar. While the wisdom of the current statutes may be justly debatable, there is nothing contained in Art. VI Â§20 to topple them.
CONCLUSION 
[Â¶36] We do not decide this dispute in an evidentiary vacuum. The facts of this case that a law enforcement officer is injured in the line of duty by an obvious inebriate without sufficient financial recourse borders on unconscionability.(fn14)  This court has consistently recognized the problem that exists on our highways. "The carnage caused by this problem is appalling." Wildeboer, 1997 SD 33 at Â¶22, 561 NW2d at 670 (citing Walz, 327 NW2d at 123, n*).(fn15)  Yet were we to judicially legislate what we firmly believe to be a justifiable result, we, not the legislature, would be guilty of a violation of the separation of powers clause of our state constitution. Within the limits of our judicial office we can only repeat what we stated in Wildeboer, "we respectfully suggest to the Legislature that it re-examine this issue." 1997 SD 33 at Â¶31, 561 NW2d at 672.(fn16)  
[Â¶37] MILLER, Chief Justice, and KONENKAMP, Justice, concur.
[Â¶38] SABERS and AMUNDSON, Justices, dissents.
SABERS, Justice (dissenting).
[Â¶39] Marshall County Deputy Sheriff David Wegleitner, acting in the line of duty, was struck from behind by a drunk driver while arresting another drunk driver. He was severely injured and damaged through no fault of his own. He simply was there, doing his job.
[Â¶40] The injuries and damages suffered by Wegleitner were caused by the drunk driver and by the bar, which allegedly continued to serve him intoxicating liquor despite his obvious intoxicated condition. The culpability of the defendants is a matter of proof at trial.
[Â¶41] The liquor lobbyists persuaded the Legislature to prevent suits for damages against the liquor provider, no matter his negligence. What a privilege to be declared free or immune from suit without any judicial inquiry!! This legislation has been labeled everything from unwise, unreasonable, unconstitutional to outright stupidity. Is it constitutional?
[Â¶42] There is no question in this case what the Legislature intended. In no uncertain terms, it said the booze providers go free, no matter their negligence. The seriously injured and damaged law enforcement officer must, figuratively speaking, lie there in his own blood without a remedy.
[Â¶43] Since there is no question what the Legislature intended, the legal question is--Can it do that? Some might say yes, even if it is unwise. Others say no, it is unconstitutional because the legislation bears no reasonable relationship to the object sought to be achieved. Others say no, it is unconstitutional for other reasons.
[Â¶44] We should hold that it is unconstitutional because the legislation violates the constitutional doctrine of separation of powers. It invades the exclusive province of the judicial branch; it simply goes too far.
[Â¶45] There are many other questions in this case which will be answered by addressing the legal question:


Whether this court will perform its constitutional duty and define the line which the Legislature should not and cannot cross.
Whether this court will live up to the South Dakota Supreme Court's oath, its reputation, its history, and its legacy of exercising its constitutional mandate to act as a check on unconstitutional legislation as demonstrated in, among other cases, South Dakota Educ. Ass'n v. Barnett, 1998 SD 84, __ NW2d __; Cary v. City of Rapid City, 1997 SD 18, 559 NW2d 891; In re Certif. of Questions of Law (Knowles v. United States), 1996 SD 10, 544 NW2d 183; and Poppen v. Walker, 520 NW2d 238 (SD 1994).
If not, will it be remembered as the court which shirked its duty and abdicated its authority by looking the other way simply because the Legislature spoke?
[Â¶46] I submit that this court should accept the challenge and the duty to point out the line the Legislature should not and cannot cross.
[Â¶47] If the Legislature is allowed to leave Deputy Wegleitner lying there in his own blood with an inadequate remedy,(17)  questions concerning the taking of life, liberty, or property are implicated, along with questions concerning the granting of improper privileges or immunities.
[Â¶48] If this legislation is upheld as constitutional, then the Legislature is free to expand privileges and immunities in any area without any limitation.
[Â¶49] SDCL 35-11-1 & 35-4-78 Violate the Constitutional Doctrine of Separation of Powers by Encroaching Upon an Exclusive Judicial Function.
[Â¶50] This appeal involves two statutes. SDCL 35-4-78 provides:


No licensee may sell any alcoholic beverage:

(1) To any person under the age of twenty-one years; or
(2) To any person who is obviously intoxicated at the time.
A violation of this section is a Class 1 misdemeanor.
However, no licensee is civilly liable to any injured person or his estate for any injury suffered, including any action for wrongful death, or property damage suffered because of the intoxication of any person due to the sale of any alcoholic beverage in violation of the provisions of this section.(fn18) 
SDCL 35-11-1 provides:


The Legislature finds that the consumption of alcoholic beverages, rather than the serving of alcoholic beverages, is the proximate cause of any injury inflicted upon another by an intoxicated person. Therefore, the rule in Walz v. City of Hudson, 327 NW2d 120 (SD 1982) is hereby abrogated.
[Â¶51] Wegleitner correctly argues that SDCL 35-11-1 is an unconstitutional infringement of an exclusive judicial function in violation of the doctrine of separation of powers. See SDConst. art. II:


The powers of the government of the state are divided into three distinct departments, the legislative, executive and judicial; and the powers and duties of each are prescribed by this Constitution.
The Legislature encroached on an exclusive judicial function when it enacted SDCL 35-11-1 and when it amended SDCL 35-4-78 and therefore we should reverse based upon the South Dakota Constitution's separation of powers doctrine.(fn19) 
[Â¶52] "The constitution is not a grant but a limitation upon the lawmaking power of the state legislature and it may enact any law not expressly or inferentially prohibited by state and federal constitutions." McDonald v. School Bd. of Yankton Ind. Sch. Dist. No. 1, 90 SD 599, 606, 246 NW2d 93, 97 (SD 1976) (citing Kramar v. Bon Homme County, 83 SD 112, 115, 155 NW2d 777, 778 (1968)); accord Kyllo v. Panzer, 535 NW2d 896, 903 (SD 1995). "Consequently, in determining whether an act is unconstitutional we search the state and federal constitutions for provisions which prohibit its enactment rather than for grants of such power." Clem v. City of Yankton, 83 SD 386, 396, 160 NW2d 125, 130 (1968).
[Â¶53] The Legislature exceeds its role when it attempts to undertake any of the powers and duties textually committed to the executive or the judiciary. SDConst art. II, reproduced supra Â¶50. See Dunker v. Brown County Bd. of Educ., 80 SD 193, 203, 121 NW2d 10, 17 (1963) ("The constitutional separation of powers cannot be done away with by legislative action."); see also Best v. Taylor Mach. Works, 689 NE2d 1057, 1078-79 (Ill 1997):


Each branch of government has its own unique sphere of authority that cannot be exercised by another branch.
This court has often recognized that the separation of the three branches of government is not absolute and unyielding. The separation of powers clause is not contravened merely because separate spheres of governmental authority may overlap. However, it should be emphasized that the determination of when, and under what circumstances, a violation of the separation of powers doctrine has occurred remains with the judiciary.(20)  In furtherance of the authority of the judiciary to carry out its constitutional obligations, the legislature is prohibited from enacting laws that unduly infringe upon the inherent powers of judges.
(Citations omitted; emphasis added).
[Â¶54] The Missouri Legislature limits liquor licensee liability by similar statutes; however, a cause of action will lie against the person licensed to sell intoxicating liquor under certain circumstances.(fn21)  The statute was challenged on several constitutional grounds, including the doctrine of separation of powers, in Simpson v. Kilcher, 749 SW2d 386 (Mo 1988). Although the majority opinion relies on that authority, Simpson's separation of powers analysis is really no analysis at all:


Simpson's claim that the legislature impermissibly interprets the law and dictates the effect to be given evidence must be rejected. To support his claim, Simpson cites State v. Burling, 400 NW2d 872 (1987), which involved a statutory provision dictating that intoxilyzer results, when the test is performed by someone with a department of health permit, are competent evidence in an alcohol-related traffic offense. The court held:



[T]he Legislature may not declare the weight to be given evidence or what evidence shall be conclusive proof of an issue of fact; ... that is to say, determining whether evidence is of probative value is a legal question, and the legislature cannot impair judicial analysis and resolution of such questions.


Id. at 876. In this case section 537.053.2 does not "impair judicial analysis" because no analysis is necessary. Under the facts of this case the statute simply bars Simpson's cause of action. The reference to proximate cause was designed to restate the reasoning used by common law courts in rejecting dram shop liability. By explicitly rejecting the reasoning of [Carver v. Schafer, 647 SW2d 570 (MoCtApp 1983); Sampson v. W.F. Enterprises, Inc., 611 SW2d 333 (MoCtApp 1980); and Nesbitt v. Westport Square, Ltd., 624 SW2d 519 (MoCtApp 1981)], the legislature made it clear that dram shop liability would no longer exist in Missouri. The reference to the cases may not have been the best means available for the legislature to express its intent, but in this case there can be no doubt the intent was to prohibit dram shop liability. A similar attack on a dram shop act which specifically abrogated established case law was rejected and the statute upheld in Cory v. Shierloh, 629 P2d 8 (Cal 1981), superseded by statute as stated in Baker v. Sudo, 240 CalRptr 38 (CalCtApp 1987). The reasoning of Cory is persuasive.
749 SW2d at 390.(fn22) 
[Â¶55] The court effectively sidestepped the separation of powers question by concluding 1) the Missouri Legislature's intent was clear; 2) another court found similar statutes constitutional on equal protection grounds; and 3) that their statutes did not "'impair judicial analysis' because no analysis is necessary." Id. The first two statements have no bearing on the question and the third cannot withstand scrutiny.(fn23) 
[Â¶56] It is axiomatic that the power to make factual determinations and interpret the law in all cases and controversies is the exclusive domain of the judiciary.(fn24) See Bandy v. Mickelson, 73 SD 485, 488-89, 44 NW2d 341, 342-43 (1950):


Defining and interpreting the law is a judicial function and the legislative branch may not limit or restrict the power granted to the courts by the constitution.
...
The legislature can create no other court; and can confer judicial power, strictly such,--that which "deprives of life, liberty, or property,"--upon no other tribunal ... . A judicial power, as such, can be exercised only by the courts. The three great departments of the government are intended to be, and must be, separate and distinct.
(Citation omitted); accord In re Nelson, 83 SD 611, 614, 163 NW2d 533, 535 (SD 1968) ("[A]ll the judicial power is expressly conferred upon the courts."). The function of this court is to interpret the laws as they affect the "life, liberty, or property of the citizens of the State." Kyllo, 535 NW2d at 901 (quoting Baatz v. Arrow Bar, 426 NW2d 298, 303 (SD 1988) (citing Cooley's Constitutional Limitations 191 (8th ed. 1927)); accord Sander v. Geib, Elston, Frost Prof'l Ass'n, 506 NW2d 107, 128 (SD 1993) (Sabers, J., concurring in result) ("The function of the judiciary is to make factual determinations and interpret the laws of the United States and the State of South Dakota in accordance with the Constitution.").
[Â¶57] Here, the Legislature invaded the exclusive function of the judiciary by precluding the courts from even considering cases and controversies involving alleged negligence of liquor licensees. This it cannot do.


To forego investigation into the existence of a fact because a certain officer not having judicial powers or opportunities of investigation has declared it to exist or not to exist, and to accept his statement as conclusive and indisputable, is in effect to refuse to exercise, as regards that specific fact, that function of the investigation and final determination of disputes which is the peculiar attribute of the judiciary as distinguished from the executive and the legislature. That the court may, if it chooses, in dealing with evidence, take such a step seems clear--though whether the legislature may constitutionally oblige it to do so is another question.
...
[I]t is quite a different thing for the judiciary to be forbidden altogether to exercise its power in a certain class of cases. The judicial function under the constitution is to apply the law in controverted cases; to apply the law necessarily involves the determination of the facts; to determine the facts necessarily involves the investigation of evidence as a basis for that determination. To forbid investigation is to forbid the exercise of an indestructible judicial function.
Hence, to make a rule of conclusive evidence, compulsory upon the judiciary, is to attempt an infringement upon their exclusive province.
4 Wigmore on Evidence Â§Â§1348, 1353, at 810-11, 848-49 (Chadbourn rev. 1972); accord Street v. Farmer's Elevator Co. of Elkton, 34 SD 523, 536, 149 NW 429, 433 (1914) (McCoy, J., dissenting):


A statute which declares what shall be taken as conclusive evidence of a fact is one which, of course, precludes investigation into the fact, and itself determines the matter in advance of all judicial inquiry. If such statutes can be upheld, there is then little use for courts, and small room indeed for the exercise of their functions.
(Quoting Missouri, Kan. & Tex. Ry. v. Simonson, 68 P 653, 655 (Kan 1902)).
[Â¶58] The effect of these statutes is to make the Legislature the final adjudicator of the rights of the parties. This is clearly unconstitutional:


If ... the practical operation of a statute is to determine adversary suits pending between party and party, by substituting in place of the well-settled rules of law the arbitrary will of the legislature, and thereby controlling the action of the tribunal before which the suits are pending, no one can doubt that it would be an unauthorized act of legislation, because it directly infringes on the peculiar and appropriate functions of the judiciary.
Cooley's, supra, 207 n2 (citation omitted).
[Â¶59] The majority opinion attempts to analogize these statutes to those which govern cases concerning sovereign immunity, workers' compensation, statutes of limitation, and volunteer immunity. Â¶25. The differences are obvious; in none of those instances does the Legislature attempt to absolutely preclude the courts from conducting an inquiry into the facts. Additionally, not one of those statutes dictates the non-liability of a tortfeasor without an examination of the facts. Under these statutes and the majority opinion's conclusion, even the hypothetical licensee described by Wegleitner cannot be sued, notwithstanding the obvious factual and causation issues his behavior raises:


By unequivocally providing that the consumption, rather than the serving of alcohol, is the proximate cause of any injury inflicted by an intoxicated person, the Legislature has precluded a person injured by an intoxicated tortfeasor from bring an action against a liquor licensee that served the tortfeasor though obviously intoxicated. This is true even if the bartender gave the tortfeasor four free shots of whiskey as he was stumbling out of the bar with his car keys in hand.
Appellant's Reply Br. at 10 (emphasis in original).
[Â¶60] It is undisputed that the Legislature may prescribe rules of procedure and evidence, allocate burdens of proof, and even create legal presumptions. However, it may not dictate the outcome of a judicial proceeding as it attempted to do in these statutes. Cf. Chotkowski v. State, 690 A2d 368, 375 (Conn 1997):


It is the court's duty to ensure that legislative action falls within constitutional boundaries; Marbury v. Madison, 5 US (1 Cranch) 137, 177-78, 2 LEd 60 (1803); even if that action involves a waiver of the immunity from suit enjoyed by the state under the common law. Consequently, the legislature cannot by mere fiat or finding, make "public" a truly "private" purpose ... . Its findings and statements about what is or is not "public" cannot be binding upon the court.
(Other citation omitted). Likewise, our Legislature's "findings and statements about what is or is not [the 'proximate cause of any injury' or who is 'civilly liable'] cannot be binding upon the court."
[Â¶61] Professor Wigmore explains the distinction by comparing statutes which 1) establish substantive rules of law with 2) those which purport to make evidence or testimony conclusive by precluding further judicial inquiry. One example of the first category may be found in the deed recording statutes.(25)  As for the second category, examples of statutes purporting to make evidence or testimony conclusive by precluding further judicial inquiry are "almost inconceivable" and primarily found in discussions demonstrating their unconstitutionality. See, e.g., Wigmore, supra, Â§1355, at 853 & n1 (collecting cases).
[Â¶62] As noted, the Legislature has the power to prescribe purely procedural rules governing the law of evidence. For example, this court ruled that a statute which provided that a prima facie case of contempt could be made upon affidavits was constitutional. State v. Mitchell, 3 SD 223, 228, 52 NW 1052, 1053 (1892), appeal dismissed, 163 US 696, 16 SCt 1204, 41 LEd 306 (1896). The appellant argued the statute was unconstitutional because it precluded judicial inquiry by making the affidavits conclusive evidence. In rejecting his argument, the court stated:


This provision does not assume to interfere with or control the judgment of the court as to the effect of the allegations and denials of the affidavits and counter affidavits. It simply leaves it with the court as a question to be judicially determined ... . It is still left to the court to say whether, under all the facts and circumstances bearing upon the candor and probable truthfulness of both the assertion of the facts and their denial by the defendant, such prima facie case is overcome.
[Â¶63] The Legislature may also enact evidentiary presumptions, so long as they are rebuttable. See SDCL 19-11-1 ("... [w]hen substantial, credible evidence has been introduced to rebut the presumption, it shall disappear from the action or proceeding, and the jury shall not be instructed thereon."); see also State v. Heisinger, 252 NW2d 899, 903 (SD 1977) ("[T]here exists a fundamental separation of powers question in conclusive statutory presumptions[.]") (citing Wigmore, supra).
[Â¶64] Here, the Legislature went well beyond prescribing a procedural rule or establishing a rebuttable presumption. Instead, it invaded the exclusive function of the judiciary by purporting to adjudicate the parties' rights in all future contested cases. Because Wegleitner showed that the statutes clearly invade and encroach upon an exclusive judicial function, he met his burden to show "beyond a reasonable doubt that the legislature acted outside of its constitutional authority." City of Chamberlain v. R.E. Lien, Inc., 521 NW2d 130, 131 (SD 1994). Therefore, we should hold that SDCL 35-11-1 and the 1985 amendment to SDCL 35-4-78 violate the constitutional doctrine of separation of powers.
[Â¶65] Although it is not our duty to advise the Legislature on the manner of drafting legislation to pass constitutional muster, it is clear that the test could be met if the causation question were stated as a rebuttable presumption rather than an irrefutable fact. It is this court's duty to interpret the law and to protect the rights of individuals against unconstitutional legislation. If a statute is unconstitutional, this court is obligated to declare it invalid. This duty cannot be avoided or neglected, no matter what the intent of the Legislature in passing the legislation.
[Â¶66] The order granting summary judgment should be reversed and the case remanded for trial, at which a jury should determine whether Bar furnished alcohol to an intoxicated Sattler, and if so, whether it was a proximate cause of the injuries inflicted on Wegleitner by Sattler.(fn26) 
[Â¶67] AMUNDSON, Justice, joins this dissent.
Footnotes
1.  The action against Sattler is not part of this appeal. Sattler and his automobile insurance carrier have apparently settled with Wegleitner. Likewise the workers' compensation rights Wegleitner would possess provided by his employer, Marshall County, are not before us. Wegleitner's patrol car was owned by his employer, Marshall County and the property damage claim to it is not involved in this litigation. 
2.  In doing so we are mindful of the constitutional limitations placed on the judiciary in interpreting constitutional provisions as discussed in Cory v. Shierloh, 629 P2d 8, 12 (Cal 1981), a case which dealt with the same subject matter as is now before us:


Before testing the classifications herein presented we caution that our constitutional inquiry does not seek to determine whether the 1978 amendments were or are wise, sound, necessary, or in the public interest. There are ample reasons for concluding otherwise. We simply ask whether the legislation adopted, for whatever purposes disclosed or undisclosed, is reasonably supportable. Each day the devastating effects of the drinking driver rage unabated with all of their tragic social and economic consequences. We do not speculate on the influences that might have prompted the Legislature to answer this acute and growing problem by narrowly restricting rather than enlarging civil liability. In the final analysis the Legislature must answer to an informed, and perhaps ultimately aroused, public opinion for its action. We do not substitute our judgment for its own. (emphasis original). 
3.  Legislative determination of what could otherwise be considered proximate cause issues for the jury is nothing new. Section 2206 of the 1887 Territory of Dakota Compiled Laws allowed suit against a tavern owner who sold, served or allowed to be consumed on his premises, alcohol, to a person whom he had been notified was a habitual drunkard. Civil damages to the intoxicated persons' family, no matter what loss was actually sustained, were set at $500.00 "for each offense." Id.


This act was in effect while the 1889 constitutional convention drafted Article II of what would become the South Dakota Constitution. See South Dakota Constitutional Convention Debates Vol. 2. A review of the constitutional debates shows no criticism of this act. Upon statehood this act became a state statute. 1890 SDSessL ch 105. "Although many members of the Constitutional convention were to become Legislators in the new State of South Dakota, the early State Legislatures felt no constitutional compulsion to strike down or even modify" this statute. Green, 1996 SD 146 at Â¶18, 557 NW2d at 402. It seems inconceivable that if this territorial statute were in violation of the separation of powers clause, it would survive the drafting of the constitution and become a state statute. 
4.  As noted in Griffin, upon Statehood, the legislature, began making limited inroads in the common law rule of nonliability against furnishers of alcoholic beverages. In early cases, this court was called upon to construe the limits of this legislation. See Paulson, supra; Kennedy, supra; Sandidge v. Widmann, 12 SD 101, 80 NW 164 (1899). A review of these early cases is totally void of any suggestion that there are constitutional separation of powers limits on the authority of the legislature to determine under what circumstances liability will arise for the furnishing of alcoholic beverages to another. 
5.  MoRevStat Â§537.053 provides:


1. Since the repeal of the Missouri Dram Shop Act in 1934 (Laws of 1933-34, extra session, page 77), it has been and continues to be the policy of this state to follow the common law of England, as declared in section 1.010, RSMo, to prohibit dram shop liability and to follow the common law rule that furnishing alcoholic beverages is not the proximate cause of injuries inflicted by intoxicated persons.
2. The legislature hereby declares that this section shall be interpreted so that the holdings in cases such as Carver v. Schafer, 647 SW2d 570 (MoCtApp 1983); Nesbitt v. Westport Square, Ltd., 624 SW2d 519 (MoCtApp 1981); and Sampson v. W.F. Enterprises, Inc., 611 SW2d 333 (MoCtApp 1980) be abrogated in favor of prior judicial interpretation finding the consumption of alcoholic beverages, rather than the furnishing of alcoholic beverages, to be the proximate cause of injuries inflicted upon another by an intoxicated person.


3. Notwithstanding subsections 1 and 2 of this section, a cause of action may be brought by or on behalf of any person who has suffered personal injury or death against any person licensed to sell intoxicating liquor by the drink for consumption on the premises who, pursuant to section 311.310, RSMo, has been convicted, or has received a suspended imposition of the sentence arising from the conviction, of the sale of intoxicating liquor to a person under the age of twenty-one years or an obviously intoxicated person if the sale of such intoxicating liquor is the proximate cause of the personal injury or death sustained by such person.
(Emphasis added). 
6.  California Bus. & Prof. Code Â§25602 is substantially similar to SDCL 35-11-1 and provides in part:


...
(c) The Legislature hereby declares that this section shall be interpreted so that the holdings in cases such as Vesely v. Sager (5 Cal3d 153), Bernhard v. Harrah's Club (16 Cal3d 313) and Coulter v. Superior Court (___ Cal3d ___) be abrogated in favor of prior judicial interpretation finding the consumption of alcoholic beverages rather than the serving of alcoholic beverages as the proximate cause of injuries inflicted upon another by an intoxicated person. 
7.  In addition to the above statute, the California Legislature specifically included the common law rule on proximate cause for voluntary intoxication scenarios in their general negligence statute.


Civil Code Â§1714 provides:

(a) Every one is responsible, not only for the result of his willful acts, but also for an injury occasioned to another by his want of ordinary care or skill in the management of his property or person, except so far as the latter has, willfully or by want of ordinary care, brought the injury upon himself. The extent of liability in such cases is defined by the Title on Compensatory Relief.
(b) It is the intent of the Legislature to abrogate the holdings in cases such as Vesely v. Sager (5 Cal3d 153), Bernhard v. Harrah's Club (16 Cal3d 313), and Coulter v. Superior Court (___ Cal3d ___) and to reinstate the prior judicial interpretation of this section as it relates to proximate cause for injuries incurred as a result of furnishing alcoholic beverages to an intoxicated person, namely that the furnishing of alcoholic beverages is not the proximate cause of injuries resulting from intoxication, but rather the consumption of alcoholic beverages is the proximate cause of injuries inflicted upon another by an intoxicated person. 
8.  Other jurisdictions have provided additional authority for the South Dakota legislature to address dram shop liability. In Noonan v. Galick, 112 A2d 892 (ConnSuperCt 1955), the court noted that since the legislature did not provide a statutory remedy against a seller of intoxicating beverages to an intoxicated person for his own injuries under a civil damage act, the legislature could hardly have intended that such a cause of action should be created by "indirection through the violation of the penal statute prohibiting sale of liquor to an intoxicated person." See also McCall v. Villa Pizza, Inc., 636 A2d 912 (DelSuperCt 1994) (holding that under Delaware law there is no statutory or common law cause of action against tavern by one injured by intoxicated person off the premises); Bennett v. Godfather's Pizza, Inc., 570 So2d 1351 (FlaCtApp 1990); Fisher v. O'Connor's Inc., 452 A2d 1313 (MdCtApp 1982); Malone v. Lambrecht, 8 NW2d 910, (Mich 1943) (holding that the penal statute did not create a cause of action in favor of consumer against furnisher of intoxicating liquor and that "whether such a provision should be embodied in the statute was within the province of the legislature, not the courts"). In Holmes v. Circo, 244 NW2d 65 (Neb 1976), the court refused to recognize a cause of action against a tavern owner as it had not been authorized by the Nebraska Legislature. 
9.  Under Wegleitner's rationale, SDCL 35-11-2, which insulates social hosts from liability for furnishing alcohol to guests, would also be unconstitutional. SDCL 35-11-2 provides:


No social host who furnishes any alcoholic beverage is civilly liable to any injured person or his estate for any injury suffered, including any action for wrongful death, or property damage suffered because of the intoxication of any person due to the consumption of such alcoholic beverage. 
10.  In Walz the Court declared: "[i]f the Legislature does not concur with our application of SDCL 35-4-78(2), as now announced, it is the prerogative of the Legislature to so assert." 327 NW2d at 122. 
11.  The constitutional declaration that every person is entitled to a certain remedy in the law, and ought to obtain justice freely, without being obliged to purchase it, completely without denial, promptly without delay, conformably to the laws (Const. art. 1 Â§9,) is invoked to overthrow the amended act of 1878. The remedy to which a party is entitled is frequently uncertain until made certain by the judgment of the court; litigation has always been attended with expense; delays have always occurred in the progress of law suits; and parties have often failed, through defect of proof or other causes, to get their just rights at the end of litigations. Notwithstanding the declaration in the constitution, doubtless these things will continue to happen, for there has not yet been developed sufficient wisdom on earth to establish a system of jurisprudence free from these hindrances to absolute justice, and the framers of the constitution never supposed that they could do so in a paragraph, and did not attempt it.
4 NW at 746-47. 
12.  This dubious result was noted by the Court in New York Life Ins. when it observed:


The guarantee of section 9, art. 1, of the state Constitution "that every person is entitled to a certain remedy in the laws" does not mean a remedy that must be accompanied by a certainty of recovery. If it did, the losing party of every lawsuit would be denied rights guaranteed to him by this section of the Constitution. This provision does no more than to guarantee to every suitor his day in a court of competent jurisdiction to which he may present his claim for judicial relief and in which he may either win a victory or suffer a defeat, according to the strength or weakness of the case which he presents.
211 NW at 291. 
13.  Wegleitner argues that the drafters could not foresee the dangers created by high-speed operation of an automobile. While that is true, they were well versed and highly concerned with the effects of alcohol. One of the major debates at the 1885 Constitutional Convention concerned prohibition. One of the chief participants in the debate would become this Court's first Presiding Judge, Deighton Corson. It was such a controversial topic that it was voted on by the public in 1885 and 1889 separately from the proposed constitution. As Delegate Corson noted, "if that proposition [prohibition] was embodied in the Constitution there was great danger it [the Constitution] would be beaten; but if submitted separately it would be much better." Corson's concerns were well taken as to the controversy over alcohol. The prohibition question was narrowly passed in 1885 by a vote of 15,570 to 15,337 and again in 1889 by 40,234 to 34,510. South Dakota Constitutional Debates of 1885, Vol 1, p 48 and 370. 
14.  Perhaps recognizing this, the Legislature has sought to lessen the financial burden imposed on accident victims such as Wegleitner by the enactment of a complex safety net of limited remedies to address this unfortunate type of situation. Those who are driving for an employer for business purposes have the benefits of workers' compensation or applicable insurance carried by the employer. See generally SDCL tit 62.
In addition, the Legislature requires all drivers to purchase liability insurance or prove financial responsibility. SDCL ch 32-35. To protect against those who violate this law by driving without insurance, the Legislature requires that all insurance policies carry both uninsured motorist protection, SDCL 58-11-9, and underinsured motorist protection, SDCL 58-11-9.4. Thus, the only way for a driver of a vehicle injured by an uninsured drunk driver to be without an insurance remedy, is by the sober driver also violating the law by failing to purchase his own insurance which would carry the mandatory uninsured and underinsured protection.
For passengers of automobiles and pedestrians who suffer injury because of the actions of a drunken driver, and not covered by other insurance, there is the further protection of the Criminal Victim's Compensation Program. See SDCL 23A-28B-1(3) and 23A-28B-19.
The court having jurisdiction over the drunken driver's criminal case may also order restitution to the victim as part of the criminal sentence without requiring the victim to proceed in a civil action against the drunken driver. SDCL 22-6-2 and 23A-28. This restitution order may be enforced by wage assignments, SDCL 23A-27-25.1, or revocation of a suspended portion of a sentence, SDCL 23A-27-25.5. In addition, the order of restitution becomes a docketed lien which can be enforced as any other statutory lien. SDCL 23A-27-25.6.
While these are remedies, they contain limits and conditions which may not guarantee full recovery to all victims in all cases. However, a constitutional rejection of SDCL 35-11-1 and 35-4-78 does not guarantee a full recovery as it is dependent on the financial condition of the bar and the extent (if any) of the insurance coverage it may possess. 
15.  See also Baatz, 426 NW2d at 307 (Miller, J. dissenting); Walz, 327 NW2d at 122, 123-24 (Wollman, J. concurring specially); and Griffin, 245 NW2d at 486-87 (Dunn, CJ, dissenting). 
16.  We do not address the due process issue as it was not raised before the trial court. City of Watertown v. Dakota, Minn. & E. R.R. Co., 1996 SD 82, Â¶26, 551 NW2d 571, 577. 
17.  If the Bar was negligent in continuing to serve Sattler after he was obviously intoxicated--a factual determination the Legislature has precluded the Judiciary from conducting--it should pay its share of Wegleitner's damages. While Wegleitner and others similarly situated have the possibility of "lessening their financial burden" via various "limited remedies" (see supra n14), why should other tortfeasors and other insurance companies bear the entire burden? There is no constitutionally sanctioned reason to allow the Legislature to provide absolute immunity to liquor licensees and it violated the constitutional doctrine of separation of powers when it did so. 
18.  The last paragraph was added by amendment in 1985. See 1985 SDSessLaws ch. 295 Â§2. 
19.  These two statutes were recently discussed in Wildeboer v. South Dakota Junior Chamber of Commerce, Inc., 1997 SD 33, Â¶Â¶20-31, 561 NW2d 666, 670-72 (Gilbertson, J., delivering the majority opinion on Issue 2) (affirming summary judgment to bars on basis that statutes precluded the lawsuit without consideration of constitutional issues).
"The subject of liability for the furnishing of alcohol to tort-feasors has been before this Court on numerous occasions." Id. at Â¶22, 561 NW2d at 670 (citing Griffin v. Sebek, 90 SD 692, 245 NW2d 481 (1976); Walz v. City of Hudson, 327 NW2d 120 (SD 1982); and Baatz v. Arrow Bar, 426 NW2d 298 (SD 1988)).
The holding of the majority on Issue 2 in Wildeboer is not controlling here since the Wildeboers did not raise constitutional issues in their appeal. In fact, these statutes have never been challenged on constitutional separation of powers grounds in a South Dakota court. However, as I stated in my dissent on Issue 2:


I dissent on this issue for the reasons expressed in Baatz v. Arrow Bar, 426 NW2d 298 (SD 1988). Baatz was decided on June 15, 1988. Baatz held that bars were subject to civil liability to those wrongfully injured by one served alcoholic beverages while intoxicated. It has been the law for eight and one-half years. Now Justice Gilbertson's writing on this issue would abandon or sidestep Baatz and provide immunity to bars until the pertinent statutes are declared unconstitutional again or changed by the Legislature.
I would not postpone the inevitable. In this instance, justice delayed is justice denied. The statutes involved in Baatz have not been corrected or modified. They contain the same defects and deserve the same treatment they received in Baatz.
Wildeboer, 1997 SD 33 at Â¶Â¶35-36, 561 NW2d at 672 (Sabers, J., dissenting as to Issue 2) (emphasis in original) (footnote omitted). 
20.  It is the role of the judiciary to declare whether a statute is unconstitutional when it is properly challenged. The fact that a statute survived the drafting of the constitution does not necessarily make it constitutional. Supra n3. Cf. Cary, 1997 SD 18, 559 NW2d 891 (declaring unconstitutional a statute which had been in effect for 50 years and withstood an identical challenge eighteen years earlier), overruling State Theatre Co. v. Smith, 276 NW2d 259 (SD 1979). 
21.  MoAnnStat Â§537.053 (West 1988) provides:


1. Since the repeal of the Missouri Dram Shop Act in 1934 (Laws of 1933-34, extra session, page 77), it has been and continues to be the policy of this state to follow the common law of England, as declared in section 1.010, RSMo, to prohibit dram shop liability and to follow the common law rule that furnishing alcoholic beverages is not the proximate cause of injuries inflicted by intoxicated persons.
2. The legislature hereby declares that this section shall be interpreted so that the holdings in cases such as Carver v. Schafer, 647 SW2d 570 (MoCtApp 1983); Sampson v. W.F. Enterprises, Inc., 611 SW2d 333 (MoCtApp 1980); and Nesbitt v. Westport Square, Ltd., 624 SW2d 519 (MoCtApp 1981) be abrogated in favor of prior judicial interpretation finding the consumption of alcoholic beverages, rather than the furnishing of alcoholic beverages, to be the proximate cause of injuries inflicted upon another by an intoxicated person.
3. Notwithstanding subsections 1 and 2 of this section, a cause of action may be brought by or on behalf of any person who has suffered personal injury or death against any person licensed to sell intoxicating liquor by the drink for consumption on the premises who, pursuant to section 311.310, RSMo, has been convicted, or has received a suspended imposition of the sentence arising from the conviction, of the sale of intoxicating liquor to a person under the age of twenty-one years or an obviously intoxicated person if the sale of such intoxicating liquor is the proximate cause of the personal injury or death sustained by such person. 
22.  It is important to note that Cory involved an equal protection challenge, not a challenge based on the constitutional separation of powers doctrine. Therefore, Cory lends nothing to our analysis. Whether these statutes pass constitutional muster under an equal protection analysis is not the issue.
The majority opinion also cites Cory and numerous other cases upholding similar legislation on other constitutional bases. Since we are not addressing those constitutional provisions, these holdings are completely immaterial to this case.
The majority opinion misses the point because this is a case of first impression, not only in South Dakota, but in the United States. The only possible conclusion is that it violates the doctrine of separation of powers because it invades the fact-finding process of the judicial branch. Moreover, because the statutes are inseparable, neither SDCL 35-11-1 nor SDCL 35-4-78 can withstand this challenge. This case is about separation of powers, not about public policy, legislative history, or whether other constitutional provisions are offended by these statutes. Nevertheless, the majority opinion devotes only four paragraphs (Â¶Â¶11, 13-14, 25) to a separation of powers discussion and concedes its other authorities do not address challenges on separation of powers grounds. Â¶15. 
23.  The majority opinion cites Reuter v. Korb, 616 NE2d 1363 (IllAppCt 1993), for its discussion of whether the legislature infringed on the role of the judiciary by enacting a comparative fault statute which modified an earlier court decision. Reuter's pertinence to this case is unclear; however, the challenged statute, which was held constitutional, does not preclude a plaintiff from bringing a cause of action and attempting to show the defendant was a proximate cause of his injury. Here, the Legislature has told Deputy Wegleitner and others similarly situated that they are wasting their time even filing a complaint because they will never be allowed to attempt to prove causation. That is not a result contemplated by Reuter. See id. at 1378 ("[T]he legislature may impose reasonable limitations and conditions upon access to the courts. Such standards do not fail on constitutional grounds simply because noncomplying actions ... may suffer dismissal."). "Reasonable limitations and conditions" is not synonymous with "no judicial inquiry, ever." See Knowles, 1996 SD 10 at Â¶69, 544 NW2d at 199 (Gilbertson, J., delivering the majority opinion on rationale for holding statute unconstitutional) ("[The Legislature] can change the remedy or the form of procedure, attach conditions precedent to its exercise (or) perhaps abolish and substitute new remedies, it cannot deny a remedy entirely.") (emphasis added & citations omitted). 
24.  It is also axiomatic that issues of proximate causation are within the exclusive realm of the judiciary. See Baatz v. Arrow Bar, 426 NW2d 298, 302 (SD 1988) ("[T]he task of determining the proximate cause of injuries in individual cases is the duty of the courts and juries, not the legislature."); see also State v. Burling, 400 NW2d 872, 876 (Neb 1987) ("[T]he Legislature may not declare the weight to be given to evidence or what evidence shall be conclusive proof of an issue of fact ... whether evidence is of probative value is a legal question, and the Legislature cannot impair judicial analysis and resolution of such question."); cf. Zens v. Harrison, 538 NW2d 794, 796 (SD 1995) ("Determining negligence has always been the jury's function."); Theunissen v. Brisky, 438 NW2d 221, 223 (SD 1989) ("This court has repeatedly said that issues of negligence, contributory negligence, and the comparative extent thereof, and proximate cause are ordinarily questions of fact and it must be a clear case before a trial judge is justified in taking these issues from the jury."). 
25.  See, e.g., SDCL 43-28-17 (assigning priority to different grantees, liens, or other claims upon the same property according to the time they were recorded without looking beyond these records and without regard for subsequent encumbrancers' actual knowledge). As Professor Wigmore explains, this does not constitute a rule of evidence:

[T]o make a rule that as between successive grantees the recorder's certificate of the time of filing deeds shall be conclusive, is not to make a rule of evidence, but merely to provide in the law of land transfer that a deed found to be recorded as of a prior date shall take effect against a deed found to be recorded as of a subsequent date, irrespective of the actual time of entry and record. In such cases, and countless others, the use of the term "conclusive evidence" cannot conceal the true nature of the rule as a rule of substantive law making a certain right or obligation depend upon the existence of a certain official writing irrespective of its truth. Such statutes do not in any way infringe the prerogative of the judiciary to satisfy itself by inquiries of fact, because they make no rule of evidence at all.
Wigmore, supra, Â§1353, at 847; Accord Street, 34 SD at 526-32, 149 NW at 429-32 (considering constitutionality of statute which made receipt for grain storage "conclusive evidence" of ownership of grain and concluding that it did not invade the province of the judiciary since it proclaimed a rule of substantive law and not a rule of evidence). 
26.  By upholding this legislation as constitutional, the majority opinion tells the Legislature it is free to grant immunity in any area without limitation. If the Legislature is free to grant immunity at will, it can make a person immune from suit for shooting his neighbor. Or, more on point, it can make his neighbor immune from suit for providing the gun to shoot another neighbor.
The Legislature can decree legal presumptions as a proper subject of public policy, but it cannot decree the final factual determination or conclusion of whether civil liability exists when A gives B a gun to shoot C. Whether A is civilly liable to C under the circumstances involves a question of causation which is finally and constitutionally determined by the courts, not the Legislature.
Likewise, whether Bar is civilly liable to Deputy Wegleitner is a question of causation finally and constitutionally determined by the courts, not the Legislature. Any legislation purporting to bypass the judicial branch by dictating the conclusion is unconstitutional.